Electronically Filed by Superior Court of California, County of Orange, 06/18/2020 12:59:44 PM.
30-2020-01143611-CU-MC-CXC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BUDDI US LLC, BUDDI LTD., MONITORING PARTNERS
LIMITED, and DOES 1-10, inclusive

1201 Hays Street
Tallahassee, FL 32301

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

S.C., individually and on behalf of all others similarly situated

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |

JUN 25 2020   10:49

Served Date:_____ Time:_____

James Kady #065
2nd Judicial Circuit

Jk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be elig ble for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court<br>751 W. Santa Ana Blvd., Santa Ana, CA 92701 | CASE NUMBER:<br>*(Número del Caso):* 30-2020-01143611-CU-MC-CXC<br><br>Judge Glenda Sanders |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael J. Hassen, Reallaw, APC, 1981 N. Broadway, Suite 280, Walnut Creek, CA 94596 (925) 359-7500

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* 06/18/2020 | DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* Georgina Ramirez | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Buddi US LLC

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412 20, 465<br>*www.courtinfo.ca.gov* |

Electronically Filed by Superior Court of California, County of Orange, 06/18/2020 12:59:44 PM.
30-2020-01143611-CU-MC-CXC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael J. Hassen (Bar No. 124823)<br>Reallaw, APC<br>1981 N. Broadway, Suite 280<br>Walnut Creek, CA 94596<br>　TELEPHONE NO.: (925) 359-7500　　FAX NO.:<br>ATTORNEY FOR *(Name):* S.C. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 751 W. Santa Ana Blvd.
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Civil Complex Center

CASE NAME:
S.C. v. Buddi US LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2020-01143611-CU-MC-CXC |
|---|---|---|
| ☑ Unlimited　☐ Limited<br>(Amount　(Amount<br>demanded　demanded is<br>exceeds $25,000)　$25,000 or less) | ☐ Counter　☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Glenda Sanders<br>DEPT: CX-101 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09)<br>☐ Insurance coverage (18) | ☐ Mass tort (40)<br>☐ Securities litigation (28) |
| ☐ Asbestos (04)<br>☐ Product liability (24) | ☐ Other contract (37)<br>**Real Property** | ☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the |
| ☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33)<br>☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31)<br>☐ Residential (32) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16)<br>☐ Intellectual property (19) | ☐ Drugs (38) | ☐ RICO (27)<br>☑ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Judicial Review**<br>☐ Asset forfeiture (05) | **Miscellaneous Civil Petition** |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Partnership and corporate governance (21) |
| ☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Writ of mandate (02)<br>☐ Other judicial review (39) | ☐ Other petition *(not specified above)* (43) |

2. This case ☑ is　☐ is not　complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties　　　d. ☐ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel　　e. ☐ Coordination with related actions pending in one or more courts
   　　issues that will be time-consuming to resolve　　　　　　in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence　　　　f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary　b. ☑ nonmonetary; declaratory or injunctive relief　c. ☑ punitive
4. Number of causes of action *(specify):* Four
5. This case ☑ is　☐ is not　a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 18, 2020

Michael J. Hassen
_____
(TYPE OR PRINT NAME)　　　　　　　　　　　　　　　▶ *(signature)*　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
    Asbestos (04)
        Asbestos Property Damage
        Asbestos Personal Injury/
            Wrongful Death
    Product Liability *(not asbestos or*
        *toxic/environmental)* (24)
    Medical Malpractice (45)
        Medical Malpractice–
            Physicians & Surgeons
        Other Professional Health Care
            Malpractice
    Other PI/PD/WD (23)
        Premises Liability (e.g., slip
            and fall)
        Intentional Bodily Injury/PD/WD
            (e.g., assault, vandalism)
        Intentional Infliction of
            Emotional Distress
        Negligent Infliction of
            Emotional Distress
        Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
    Business Tort/Unfair Business
        Practice (07)
    Civil Rights (e.g., discrimination,
        false arrest) *(not civil*
        *harassment)* (08)
    Defamation (e.g., slander, libel)
        (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice
            *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

**Contract**
    Breach of Contract/Warranty (06)
        Breach of Rental/Lease
            Contract *(not unlawful detainer*
                *or wrongful eviction)*
        Contract/Warranty Breach–Seller
            Plaintiff *(not fraud or negligence)*
        Negligent Breach of Contract/
            Warranty
        Other Breach of Contract/Warranty
    Collections (e.g., money owed, open
        book accounts) (09)
        Collection Case–Seller Plaintiff
        Other Promissory Note/Collections
            Case
    Insurance Coverage *(not provisionally*
        *complex)* (18)
        Auto Subrogation
        Other Coverage
    Other Contract (37)
        Contractual Fraud
        Other Contract Dispute
**Real Property**
    Eminent Domain/Inverse
        Condemnation (14)
    Wrongful Eviction (33)
    Other Real Property (e.g., quiet title) (26)
        Writ of Possession of Real Property
        Mortgage Foreclosure
        Quiet Title
        Other Real Property *(not eminent*
            *domain, landlord/tenant, or*
            *foreclosure)*
**Unlawful Detainer**
    Commercial (31)
    Residential (32)
    Drugs (38) *(if the case involves illegal*
        *drugs, check this item; otherwise,*
        *report as Commercial or Residential)*
**Judicial Review**
    Asset Forfeiture (05)
    Petition Re: Arbitration Award (11)
    Writ of Mandate (02)
        Writ–Administrative Mandamus
        Writ–Mandamus on Limited Court
            Case Matter
        Writ–Other Limited Court Case
            Review
    Other Judicial Review (39)
        Review of Health Officer Order
        Notice of Appeal–Labor
            Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
    Antitrust/Trade Regulation (03)
    Construction Defect (10)
    Claims Involving Mass Tort (40)
    Securities Litigation (28)
    Environmental/Toxic Tort (30)
    Insurance Coverage Claims
        *(arising from provisionally complex*
        *case type listed above)* (41)
**Enforcement of Judgment**
    Enforcement of Judgment (20)
        Abstract of Judgment (Out of
            County)
        Confession of Judgment *(non-*
            *domestic relations)*
        Sister State Judgment
        Administrative Agency Award
            *(not unpaid taxes)*
        Petition/Certification of Entry of
            Judgment on Unpaid Taxes
        Other Enforcement of Judgment
            Case
**Miscellaneous Civil Complaint**
    RICO (27)
    Other Complaint *(not specified*
        *above)* (42)
        Declaratory Relief Only
        Injunctive Relief Only *(non-*
            *harassment)*
        Mechanics Lien
        Other Commercial Complaint
            Case *(non-tort/non-complex)*
        Other Civil Complaint
            *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
    Partnership and Corporate
        Governance (21)
    Other Petition *(not specified*
        *above)* (43)
        Civil Harassment
        Workplace Violence
        Elder/Dependent Adult
            Abuse
        Election Contest
        Petition for Name Change
        Petition for Relief From Late
            Claim
        Other Civil Petition

Electronically Filed by Superior Court of California, County of Orange, 06/18/2020 12:59:44 PM.
30-2020-01143611-CU-MC-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

TODD M. FRIEDMAN (SBN 216752)
ADRIAN R. BACON (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
tfriedman@toddflaw.com
abacon@toddflaw.com

REALLAW, APC
MICHAEL J. HASSEN (Bar No. 124823)
1981 N. Broadway, Suite 280
Walnut Creek, CA 94596
Telephone: (925) 359-7500
mjhassen@reallaw.us

Attorneys for Plaintiff S.C., individually and on
behalf of all others similarly situated

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| S.C., individually and on behalf of all others similarly situated, | Case No.  30-2020-01143611-CU-MC-CXC |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE STORED COMMUNICATIONS ACT, THE ELECTRONIC COMMUNICATIONS PRIVACY ACT, THE TELEPHONE CONSUMER PROTECTION ACT, AND CALIFORNIA'S INVASION OF PRIVACY ACT** |
| v. | |
| BUDDI US LLC, BUDDI LTD., MONITORING PARTNERS LIMITED, and DOES 1-10, inclusive, | |
| Defendants. | Assigned for All Purposes |
| | Judge Glenda Sanders |
| | cx-101 |

Plaintiff S.C., individually and on behalf of all others similarly situated, complains and

alleges against Defendants Buddi US LLC, Buddi Ltd., and Monitoring Partners Limited

(hereafter collectively "Buddi") as follows:

**INTRODUCTION**

1.     Plaintiff and each member of the putative class faces immediate and irreparable injury if Buddi is allowed to continue to unlawfully track, locate and contact Plaintiff and members of the class and to remove without the consent of Libre by Nexus, Inc. ("Libre") the tracking bracelets Plaintiff and class members were asked to wear as a condition to securing their release from Immigration & Customs Enforcement ("ICE") custody, on bond, pending a determination by the federal government as to their immigration status; Buddi's actions could subject the Plaintiff and all other class members to immediate arrest and deportation.

**JURISDICTION AND VENUE**

2.     This class action is brought pursuant to Code of Civil Procedure section 382. The monetary damages sought by Plaintiff exceeds the jurisdictional limits of the Superior Court and will be established according to proof at trial.  This Court has jurisdiction over this action pursuant to Article VI, Section 10, of the California Constitution.

3.     The Court has personal jurisdiction over Defendant Buddi US LLC, a Delaware limited liability corporation with its principal place in Palm Harbor, Florida, because it is licensed to do business in the State of California and does business in the State of California and in this County.

4.     The Court has personal jurisdiction over Defendant Buddi Ltd. because it is the parent corporation of Buddi US LLC, and does business in California and in this County.

5.     The Court has personal jurisdiction over Defendant Monitoring Partners Limited because it is headquartered in Palm Harbor, Florida and does business in California and in this County.

6.     Venue is proper in this County because pursuant to Code of Civil Procedure section 395.5 it is the County "where the obligation or liability arises, or the breach occurs". The actions undertaken by Defendants that give rise to Plaintiff's claims occurred within this County.

**PARTIES**

7.     Plaintiff S.C. ("Plaintiff") is a resident of Orange County. Plaintiff had been arrested and detained by ICE for entering the United States without permission., but Plaintiff was

1  released from ICE detention because Plaintiff obtained an immigrant release bond (ICE Form I-
2  352) securing Plaintiff's release.

3          8.      Defendant Buddi US LLC is a Delaware limited liability corporation with
4  its principal place in Palm Harbor, Florida.

5          9.      Defendant Buddi Ltd. is the parent corporation of Buddi US LLC.

6          10.     Defendant Monitoring Partners Limited is an affiliate of Buddi Ltd. and
7  Buddi US LLC, and it operates out of the same address as Buddi US LLC.

8          11.     Plaintiff is informed and believes that Buddi US LLC, Buddi Limited and
9  Monitoring Partners Limited act as one company such that each is the alter ego of the other and
10 such that they should be considered and treated as one and the same entity for purposes of
11 establishing liability and damages. Hereafter Buddi US LLC, Buddi Ltd. and Monitoring Partners
12 Limited are collectively referred to as "Buddi."

13         12.     Plaintiff is unaware of the true names and capacities of Defendants sued
14 herein as Does 1-10, inclusive ("Doe Defendants"), and therefore sues these Doe Defendants by
15 such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names
16 and capacities of said Doe Defendants when ascertained. Plaintiff is informed and believes that at
17 all relevant times mentioned herein, each of the fictitiously-named Doe Defendants conducted
18 business in Orange County, California, and is culpable or responsible in some manner and/or
19 conspired with one or more of the other Defendants for the conduct, acts, omissions, occurrences,
20 injuries, and damages herein alleged, and that Plaintiff's injuries and damages were directly and
21 proximately caused thereby.

22                          **CLASS ACTION ALLEGATIONS**

23         13.     Plaintiff brings this lawsuit individually, as well as on behalf of each and
24 every other person similarly situated, and thus seeks class certification under Code of Civil
25 Procedure section 382.

26         14.     The claims alleged herein arise from violations of federal law and as such
27 are suitable for nationwide class action treatment as the interpretation of these laws will not vary
28 from state to state.

15.     Plaintiff's proposed class consists of and is defined as follows:

***Nationwide Device Removal Class:***

All persons who were contacted by Buddi without the Class Member's consent for the purpose of removing their GPS tracking bracelet.

***Nationwide Invaded Privacy Class:***

All persons whose location was tracked by Buddi as part of Buddi's efforts to locate individuals within a certain area who were wearing a Buddi GPS tracking bracelet.

***California Device Removal Subclass:***

All California residents who were contacted by Buddi without the Class Member's consent for the purpose of removing their GPS tracking bracelet.

***California Invaded Privacy Subclass:***

All California residents whose location was tracked by Buddi as part of Buddi's efforts to locate individuals within a certain area who were wearing a Buddi GPS tracking bracelet.

16.     Members of the Nationwide Device Removal Class and Nationwide Invaded Privacy Class are referred to herein as "Class Members." Members of the California Device Removal Subclass and California Invaded Privacy Subclass are referred to herein as "California Subclass Members." Plaintiffs reserve the right to redefine the nationwide classes and to add further subclasses as appropriate, based upon further investigation, discovery, and specific theories of liability.

17.     There are common questions of law and fact as to Class Members and California Subclass Members that predominate over questions affecting only individual members, including but not limited to:

a.     Whether Buddi may, without the Class Members' knowledge or consent, use their GPS tracking bracelet to identify their location;

b.     Whether Buddi may, without the Class Members' knowledge or consent, use their GPS tracking bracelet to identify their location for the purpose of determining which Class Members are within a certain geographic region so that Buddi may initiate contact with them for its personal financial gain;

4

c. Whether Buddi may, without the Class Members' knowledge or consent, access Class Members' cell phone numbers by reviewing information entrusted to Buddi in confidence by a third party, Libre, pursuant to a contractual agreement with Buddi that Buddi shall not to use that information for any purpose without Libre's consent;

d. Whether Buddi may, without the Class Members' knowledge or consent, use Class Members' cell phones to contact them – by text and/or by phone – after obtaining the Class Members' cell phone numbers by reviewing information entrusted to Buddi in confidence by a third party, Libre, pursuant to a contractual agreement with Buddi that Buddi shall not to use that information for any purpose without Libre's consent;

e. Whether Buddi may use Class Members' cell phones to contact them – by text and/or by phone – and falsely represent that they are calling on behalf of Libre in order to trick Class Members into meeting with Buddi so that Buddi can remove the Class Members' GPS tracking bracelets for its personal financial gain;

f. Whether Buddi may share Class Members' cell phones to contact them – by text and/or by phone – with other third parties who falsely represent that they are calling on behalf of Libre in order to trick Class Members into meeting with Buddi so that the third party can remove the Class Members' GPS tracking bracelets for its and Buddi's personal financial gain;

g. Whether Buddi's conduct violates the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* ("SCA");

h. Whether Buddi's conduct violates the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA");

i. Whether Buddi's conduct violates the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA"); and

j.   Whether Buddi's conduct violates the California Invasion of Privacy Act ("CIPA"), California Penal Code section 637.7;

k.   Whether Buddi has placed Class Members at increased risk of arrest and deportation by contacting Class Members and removing their GPS tracking bracelets.

18.   The identity of the Class Members is readily ascertainable from Buddi's records.

19.   There is a well-defined community of interest in the lawsuit as follows:

a.   Numerosity: The sizes of the Nationwide Device Removal Class, Nationwide Invaded Privacy Class, California Device Removal Subclass and California Invaded Privacy Subclass are so numerous that joinder of all members would be neither feasible nor practical. The memberships of the nationwide classes and California subclasses are unknown to Plaintiff at this time, but Plaintiff estimates there to be greater than 100 individuals in each such class and subclass.

b.   Commonality and Typicality: Plaintiff's claims and defenses, if any, are typical of those of other Class Members, and the claims of all Class Members turn on the resolution of common questions concerning Buddi's conduct in obtaining and using Plaintiff's and the Class Members' cell phone and GPS tracking information, utilizing to identify where all Class Members were so that Buddi could contact those Class Members in certain geographic locations, and falsely representing to Class Members that Buddi was contacting them on behalf of Libre.

c.   Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom Plaintiff has a well-defined community of interest and with whom they share common and typical claims. Plaintiff's attorney – the proposed class counsel – is well-versed in the rules governing class action discovery, certification, and settlement.

6

d.     Superiority: The nature of this lawsuit makes the use of the class action device superior to other methods of adjudication. A class action will achieve economies of time, effort and expense – both for the parties and for the courts – as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

## THE IMMIGRATION PROCESS

20.     The Secretary ("Secretary") of the Department of Homeland Security ("DHS") has been given authority and powers pursuant of the Immigration and Nationality Act (INA). Specifically, 8 U.S.C. §1103(a)(1) charges the Secretary with the administration and enforcement of the INA by promulgating regulations, procedures, and policies.

21.     One of the Secretary's enumerated powers is to prescribe the "bonds" used by detained asylum seekers attempting to bail out of Immigration and Customs Enforcement ("ICE") detention pending status determination. 8 U.S.C. §1103(a)(3). "Surety bonds," in turn, are regulated pursuant to 8 C.F.R. §103.6(a) and (b), and by Treasury Department laws and statutes.

22.     The Secretary's specific regulations concerning the administration of "asylum" are at 8 C.F.R. §208.1 *et seq.* Thereunder, when an asylum detainee enters at other than a port of entry, as many do, he or she may be released on a cash or surety bond, after a "risk classification assessment." At some later point, the detainee must present for himself or herself at an ICE administrative hearing to determine status.

## GENERAL ALLEGATIONS

23.     Libre assists immigrants located throughout the country obtain release from detention by U.S. Immigration and Customs Enforcement ("ICE"). When an undocumented immigrant enters the United States and is detained by ICE, a family member or friend will contact Libre in the hope of engaging Libre's services in assisting to secure the release of their loved one from immigration detention.

24.     All Libre clients currently live in the United States. They contract with Libre in or near the city in which they were detained. Integral to the process of securing the release

7

of an undocumented immigrant from ICE detention is the posting of a bond that allows for their release. These bonds can be as low as $1,500 and can be as high as $50,000 or more. The bond serves as a guarantee to the federal government that, once out of detention, the bonded individual will attend all immigration court hearings.

25.     Upon being contacted by a loved one, Libre finds out where the undocumented is being held (often the loved one does not have this information), contacts the undocumented immigrant on behalf of their loved one, and arranges to secure a bond for them. Libre then facilitates the immigrant's release.

26.     At all hours of the day or night, Libre picks up immigrants from the detention centers, many of which are remote, feeds them, and provides them with clothes and essential toiletries. Clothing is particularly important in cold weather states in which immigrants are released in the same clothes they were arrested in (even if they were arrested in El Paso during a heat wave but detained in Buffalo during a cold snap) and are prohibited from reentering the facility once released.

27.     Libre also provides its clients, known as Program Participants, with a cell phone to contact their families and to facilitate their reentry into society.

28.     Frequently, Libre arranges for the transport of the immigrants released from ICE custody to their families. This begins to provide some humanity back to the individuals after they have endured a process which utterly strips all humanity and dignity from them.

29.     Importantly, Libre does not post release bonds. Rather, it agrees to indemnify for a bonding company to post the immigration bond on behalf of the undocumented immigrant who becomes a Libre Program Participant. This is important because bonding companies general require collateral in the full amount of the bond as a prerequisite to posting the requisite bond, so Libre arranges to indemnify the bonding company against loss on the bond.

30.     Libre thus provides critical services to immigrants who languish in detention facilities, because they cannot afford to post immigration bonds. Libre provides guarantees for immigration bonds that are posted by third party licensed bail bondsmen and secured by third party federally-approved insurance companies.

1       31.    Libre's program allows detained immigrants to post their bonds and be

2 reunited with their families without having to pay the full amount of their bonds, and it allows

3 immigrant detainees to secure release without requiring collateral because Libre indemnifies

4 sureties or bail agents from losses in writing civil immigration bonds.  This is important because

5 many immigrants languish in ICE custody, at taxpayer expense, because traditional bonding

6 models require 100% of the face value of the bond in collateral in addition to a fee for the

7 bondsman's service.  Additionally, many of these companies require an annual renewal fee of

8 several thousand dollars.  A ten-thousand-dollar bond can cost a family upwards of $11,000.00 at

9 the time it is posted and thousands of dollars more over the life of the bond.

10       32.    A number of Libre's Program Participants are people who have come to the

11 United Stated seeking asylum.  For example, many clients are escaping a death sentence in their

12 own country because they are former law enforcement, military, are targeted minorities (such as

13 indigenous people or members of the LGBTQ community) or are fleeing gang violence. Thus,

14 deportation for these immigrants is often the equivalent of a death sentence.

15       33.    Unless immigrant detainees are able to post bonds, they are required to live

16 in detention centers that are increasingly unsafe and overcrowded.  In many instances, the

17 detention centers are unlivable for extended periods of time. The U.S. immigration system is

18 overburdened and without necessary resources, which results in radically prolonged incarceration

19 rates for immigrants who cannot post bond. Thousands of detained immigrants are languishing in

20 these facilities at the taxpayer's expense.

21       34.    Again, unlike criminal proceedings, immigration detainees are generally

22 required to post the full bond that is set before the detainee will be released, which makes the

23 posting of immigration bonds extremely difficult for most undocumented immigrants, particularly

24 as bond amounts can often exceed $25,000. Libre arranges for these immigration release bonds,

25 and rather than paying the full amount of the bond, Libre's clients typically pay a bond premium

26 of only 10-15% of the face value of the bond to the bondsman.

27       35.    Libre's monitoring program has proven to be wildly successful, with a

28 failure to appear rate of less than 3%. This success rate is unheard of in the immigration or

1  criminal bonding industries. This failure rate is all the more remarkable when one considers that

2  Libre now serves more than 30,000 Program Participants.

3       36.    Libre's success is tied to the services it provides to its clients and the trust it

4  develops with its clients. This trust is of critical importance to Class Members – they know that

5  they have entrusted Libre with information that could be used against them or their friends and

6  family, to send them back home, in some cases to their death. Class Members' trust in Libre

7  results in extraordinarily high compliance by Class Members who have been convinced by Libre

8  to trust the immigration system to do the right thing.

9       37.    There are a limited number of bonding companies that can post immigration

10 bonds, and an even a smaller number of surety companies that can work with Libre. Even with

11 Libre's agreement to fully indemnify the insurance companies if a Program Participant fails to

12 voluntarily appear in court, insurance carriers are reluctant to secure civil immigration bonds

13 because of the traditionally high rate of failure to appear by undocumented immigrants.

14       38.    For the few insurance companies that are qualified to serve as federal

15 sureties and which will agree to accept Libre's financial guarantees, Libre must demonstrate that it

16 has developed and deployed appropriate risk mitigation tools and services.  To achieve this goal,

17 Libre has traditionally combined the client centric support services with GPS technology. This is

18 because, despite Libre's promise to indemnify and despite its proven track record, ***bonding***

19 ***companies have often required that the undocumented immigrant wear a tracking bracelet***.

20       39.    Libre's GPS vendors do not sell the equipment, they lease it to Libre, as

21 Buddi did.  Libre relies on equipment it leases to secure its risk and insure compliance with its

22 program. When devices are damaged, destroyed or removed, both Libre and Program Participants

23 *i.e.*, the Class Members) are harmed. In such circumstances, Libre believes its Program Participant

24 is not in compliance with its monitoring program. ***This could lead to the surety being notified of***

25 ***non-compliance, which could independently act to cause the arrest of the Program Participant.***

26       40.    Buddi entered into a contract with Libre to lease GPS tracking bracelets and

27 to provide monitoring services required to mitigate Libre's risk in indemnifying the immigration

28 bond. Plaintiff understands that Buddi recently contacted Libre and threatened to terminate its

1   tracking services and has contacted Libre's clients, without Libre's knowledge or consent and

2   without the Class Members' knowledge or consent, and demanded return of the tracking bracelets

3   so Buddi can re-lease the equipment for many times as much money as Libre's contract price.

4           41.     In short, Buddi has placed profit above the laws of contract and the laws of

5   morality, subjecting innocent undocumented immigrants to increased risk of deportation simply so

6   it can take advantage of the coronavirus pandemic and re-lease Libre's tracking bracelets for

7   substantially more money. Apparently, the coronavirus pandemic had created a demand for

8   Buddi's devices that would allow it to charge governments substantially more money than the

9   amounts it normally charged government agencies, and approximately four (4) times more than

10   the amount set forth in Buddi's contract with Libre. Buddi wanted to take advantage of the needs

11   of government entities to maximize its profits.

12           42.     Motivated solely by greed, Buddi began contacting Class Members and

13   stated that they were with Libre and offered to remove their GPS units. One Buddi employee, Matt

14   Iannarelli, held several "Meetings" at Home Depot stores in Tennessee after sending Libre clients

15   text messages stating, "I'm just removing monitors and picking up charging gear.  Libre stopped

16   paying us for using the equipment and violated our contract. They owe us too much money, so I'm

17   going to take back what they were using."

18           43.     Another text message from Matt Iannarelli to a Libre Program Participant

19   stated in part, "[A]nd tell anyone else you know that has the same monitor. If they have the same

20   device and got it through [Libre] I will remove it."

21           44.     Buddi not only used its own employees to contact Class Members but

22   contracted with direct competitors of Libre to contact Class Members – falsely representing to do

23   so "on behalf of Libre" – and shared with Libre's competitors information that Buddi had obtained

24   from Libre in strictest confidence or that Buddi had obtained by violating the privacy rights of

25   Plaintiff and the Class Members.

26           45.     Buddi claims it was entitled to contact Class Members directly in order to

27   recover its equipment.

28

46.     There is no way Buddi could have learned of the telephone numbers and location of Libre's Program Participants without using Libre's confidential information in direct breach of the terms of Buddi's contract with Libre. Specifically, Paragraph 12 of the Contract is entitled "Confidential Information" and provides in part:

> B.     [Buddi] shall not disclose[] any information about Wearers [*i.e.*, Class Members] enrolled in the system without the written consent of an authorized officer of the Customer unless compelled to do so by law enforcement official or court of law.

Class Members are plainly third party beneficiaries of this contract, as it is they who have the privacy interests protected by this clause.

## SPECIFIC ALLEGATIONS RE PLAINTIFF

47.     On or about April 17, 2020, Plaintiff received a call from an individual calling from telephone number 714-878-5414, whom Plaintiff later learned was Brenda Coronado. Unbeknownst to Plaintiff, Ms. Coronado was an employee of Diversified Monitoring, *a direct competitor of Libre with ties to immigration as well as probation and parole services*, who had been subcontracted by Buddi to remove GPS tracking devices from Class Members. Ms. Coronado left a message for Plaintiff stating that she wanted to go to Plaintiff's house to meet with Plaintiff.

48.     Plaintiff returned the telephone call and Ms. Coronado falsely represented to Plaintiff that she was "calling on behalf of Libre" and that she wanted to meet with Plaintiff to remove Plaintiff's tracking bracelet.

49.     Plaintiff met with Ms. Coronado and Ms. Coronado removed Plaintiff's tracking bracelet.

50.     At the time Plaintiff met with Ms. Coronado, Plaintiff believed that Ms. Coronado was meeting with Plaintiff on behalf of Libre.

51.     At the time Plaintiff allowed Ms. Coronado to remove the GPS tracking device, Plaintiff believed that Ms. Coronado was doing so at the request of and on behalf of Libre.

52.     In point of fact, Ms. Coronado was an employee of a direct competitor of Libre and had been subcontracted by Buddi.

53.     In point of fact, Libre had not asked Buddi or Ms. Coronado to contact Plaintiff or to meet with Plaintiff.

54.     In point of fact, Libre had not consented to Buddi or Ms. Coronado contacting Plaintiff or meeting with Plaintiff.

55.     In point of fact, Libre had not consented to Buddi or Ms. Coronado removing Plaintiff's tracking bracelet.

56.     Plaintiff never gave consent to Buddi to determine Plaintiff's confidential location by accessing and utilizing data from the GPS tracking device that Plaintiff had been wearing.

57.     Plaintiff had no knowledge that Buddi had determined Plaintiff's confidential location by accessing and utilizing data from the GPS tracking device that Plaintiff had been wearing.

58.     Plaintiff never gave consent to Buddi to access or use Plaintiff's confidential telephone number to contact Plaintiff.

59.     Plaintiff had no knowledge that Buddi had accessed or used confidential information provided to it by Libre in order to determine Plaintiff's telephone number so it could contact Plaintiff.

60.     In truth, Buddi unlawfully accessed Plaintiff's confidential GPS tracking information in order to locate Plaintiff, improperly accessed Plaintiff's telephone number in order to contact Plaintiff, and falsely represented to Plaintiff that Ms. Coronado was calling on behalf of Libre so that it could improperly remove Plaintiff's GPS tracking device to advance Buddi's own economic self-interest without regard to the invasions of Plaintiff's privacy and to the risk of arrest and deportation that Plaintiff now faced due to Buddi's greed-motivated conduct.

## FIRST CAUSE OF ACTION

### Violations of the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*

### (On Behalf of Both Nationwide Classes)

61.     Plaintiff incorporates paragraphs 1 through 60 as though fully set forth herein.

62.     The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* (the "ECPA") defines an "electronic communication" very broadly so as to encompass "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

63.     The Stored Communications Act (the "SCA") incorporates the ECPA's definition of "electronic communication."

64.     Under both the ECPA and the SCA, "electronic storage" is defined as any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof," 18 U.S.C. § 2510(17)(A), and includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

65.     In part, Congress enacted the SCA in order to prevent "unauthorized persons [from] deliberately gaining access to ... electronic or wire communications that are not intended to be available to the public." Senate Report No. 99-541, S. REP. 99-541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

66.     Buddi has designed its GPS tracking devices to store the location information of its wearers, here the Class Members. Buddi violated 18 U.S.C. § 2701(a)(1) by intentionally accessing Class Members' communications without authorization and obtained access to a wire or electronic communication while in electronic storage by collecting location data from the stored file on Plaintiff's and the Class Members' GPS tracking devices, despite its contractual commitment to Libre that it would not access or use that information, which plainly was not available to the public.

67.     Additionally, Buddi violated 18 U.S.C. § 2701(a)(2) because it intentionally exceeded the authorization of Class Members' to access their communications and obtained access to a wire or electronic communication while in electronic storage by collecting location data from the stored file on Plaintiff's and the Class Members' GPS tracking devices, despite the fact that the user did not want Buddi to have access to that information and had not consented to Buddi obtaining access to that information.

1    68.    Buddi violated the SCA for its commercial advantage and to its private

2  commercial gain.

3    69.    As a result of Buddi's conduct, Plaintiff and the Class Members have

4  suffered injury. Plaintiff, individually and on behalf of the Class, seeks an order enjoining Buddi

5  from using the GPS tracking information for any purpose and seeks a judgment awarding Plaintiff

6  and the Class Members the maximum statutory and punitive damages available under 18 U.S.C.

7  § 2707.

8                    **SECOND CAUSE OF ACTION**

9    **Violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.***

10                  **(On Behalf of Both Nationwide Classes)**

11    70.    Plaintiff incorporates paragraphs 1 through 69 as though fully set forth

12  herein.

13    71.    As noted above, the ECPA defines an "electronic communication" as "any

14  transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in

15  whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that

16  affects interstate or foreign commerce..." 18 U.S.C. § 2510(12).

17    72.    The ECPA further defines an "electronic communications system" as "any

18  wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire

19  or electronic communications, and any computer facilities or related electronic equipment for the

20  electronic storage of such communications." 18 U.S.C. § 2510(14).

21    73.    Finally, under the ECPA the "contents" of a communication includes any

22  information concerning the substance of that communication, 18 U.S.C. § 2510(8), as well as any

23  information concerning the identity of any of the parties to the communication. Congress's

24  ultimate goal was to comprehensively protect the privacy of communications, so no aspect of such

25  communications is excluded.

26    74.    Buddi violated 18 U.S.C. § 2511(1)(a) because it intentionally intercepted

27  and endeavored to intercept Plaintiff's and Class Members' electronic communications from their

28  GPS tracking devices without the consent of the Class Members.

75.    Buddi violated 18 U.S.C. § 2511(1)(d) because it intentionally used and endeavored to use the electronic communications from Plaintiff's and the Class Members' GPS tracking devices for its own commercial advantage and private commercial gain, and knew or should have known that such information had been obtained in violation of 18 U.S.C. § 2511(1).

76.    Buddi intentionally obtained and intercepted the electronic communications without the knowledge, consent or authorization of Plaintiff or the Class Members.

77.    Plaintiff and the Class Members suffered harm as a result of Buddi's violations of the ECPA, and seek (a) preliminary, equitable and declaratory relief as warranted, (b) the greater of the sum of the actual damages suffered by the Class Members and the profits realized by Buddi as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), (c) punitive damages, and (d) reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq.

### (On Behalf of Both Nationwide Classes)

78.    Plaintiff incorporates paragraphs 1 through 77 as though fully set forth herein.

79.    The Telephone Consumer Protection Act (TCPA) restricts the making of telemarketing calls and the use of automatic telephone dialing systems and artificial or prerecorded voice messages.

80.    To state a claim under the TCPA, a plaintiff must allege "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Holt v. Facebook, Inc.*, 240 F.Supp.3d 1021, 1026 (N.D. Cal. 2017).

81.    Text messages are calls under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

82.    Buddi violated the TCPA by texting Class Members and soliciting them to meet with Buddi employees and/or subcontractors under the false pretense that Buddi was contacting Class Members on behalf of Libre and wanted their cooperation with the removal of

their GPS tracking devices, which conduct was solely to Buddi's commercial advantage and private commercial gain.

83. The first prong is plainly satisfied: Plaintiff and the Class Members received text messages and/or telephone calls on their cell phone numbers.

84. The third prong also is plainly satisfied. Buddi did not have Plaintiff's or the Class Members' consent to be contacted, nor did Buddi have the consent of Libre to contact them on Libre's behalf.

85. Finally, Plaintiff alleges that the second prong – whether Buddi "us[ed] an automatic telephone dialing system" – also is met.

86. An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator: and to dial such numbers." 47 U.S.C. § 227(a)(1). "[T]he statute's clear language mandates that the focus must be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Satterfield*, 569 F.3d at 951. Thus, "a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Holt*, 240 F.Supp.3d at p. 1026.

87. Plaintiff is informed and believes that the telephone calls and text messages placed to Plaintiff and the Class Members by Buddi and/or on Buddi's behalf were made from a cell phone or from equipment that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator," even if that capability was not used with respect to the communications with the Class Members.

88. The TCPA provides for the recovery of actual monetary loss resulting from a violation of the statute, or for $500 in statutory damages for each such violation and treble damages if the violation was willful or knowing. *Kaufman v. ACS Sys., Inc.*, 110 Cal.App.4th 886, 896 (2003).

89. Plaintiff alleges that Buddi's misconduct was willful and knowing, entitling Plaintiff and the Class Members to recover treble damages for each communication from Buddi.

## FOURTH CAUSE OF ACTION

### California Invasion of Privacy Act, Penal Code § 637.7

### (On Behalf of Both California Subclasses)

90.     Plaintiff incorporates paragraphs 1 through 89 as though fully set forth herein.

91.     California's Invasion of Privacy Act ("CIPA") is codified in Penal Code section 637.7, which provides in pertinent part: "No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person." (Penal Code, § 637.7(a).) "As used in this section, 'electronic tracking device' means any device attached to a … movable thing that reveals its location or movement by the transmission of electronic signals." (Penal Code, § 637,7(d).)

92.     Buddi violated Plaintiff's and the California Subclass Members' privacy by using an electronic tracking device (the GPS tracking devices) in order to determine their location, so that Buddi could contact California Subclass Members who were in certain geographic regions in order to remove their GPS tracking devices.

93.     Actual injury need not be shown in order to recover damages. By statute, Buddi is liable for the greater of $5,000.00 per violation or treble the injured person's actual damages. (Penal Code, § 637.2.) On behalf of Plaintiff and the California Subclass Members, Plaintiff seeks damages in the amount of $5,000.00 per violation for each member of the California Subclasses.

WHEREFORE, Plaintiff prays for judgment as follows:

### PRAYER FOR RELIEF

1.     Certifying this action for nationwide class treatment, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

2.     Certifying this action for California subclass treatment, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

3.     Enjoining Buddi from accessing tracking information associated with any Nationwide Class Member or California Subclass Member;

CLASS ACTION COMPLAINT

1       4.    Enjoining Buddi from contacting any Nationwide Class Member or

2  California Subclass Member;

3       5.    Awarding damages or restitution, including pre-judgment interest, on each

4  count in an amount to be determined at trial;

5       6.    Imposing punitive damages on Buddi in an amount sufficient to penalize

6  and deter its wrongful conduct;

7       7.    Awarding reasonable attorneys' fees and costs of litigation; and

8       8.    Granting such other relief as the Court may deem just and proper.

9            **DEMAND FOR JURY TRIAL**

10       Plaintiff requests a jury trial for any counts for which a trial by jury is permitted by

11  law.

12

13  DATED: June 18, 2020          LAW OFFICES OF TODD M. FRIEDMAN, P.C.

14

15                     By:     /s/ Todd M. Friedman

16                          Todd M. Friedman
                              Adrian R. Bacon

17

18  DATED: June 18, 2020          REALLAW, APC

19

20                     By:     /s/ Michael J. Hassen
                              Michael J. Hassen

21

22                          Attorneys for Plaintiff S.C., individually and on
                          behalf of all others similarly situated

23

24

25

26

27

28

19

# SUPERIOR COURT OF CALIFORNIA

## ORANGE

**751 W. Santa Ana Blvd**

**Santa Ana, CA 92701**

**(657) 622-5300**

**www.occourts.org**

## NOTICE OF CASE ASSIGNMENT

Case Number: **30-2020-01143611-CU-MC-CXC**

Your case has been assigned for all purposes to the judicial officer indicated below. A copy of this information must be provided with the complaint or petition, and with any cross-complaint that names a new party to the underlying action.

| ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
|---|---|---|---|
| Hon. Glenda Sanders | CIVIL COMPLEX CENTER | CX101 | (657) 622-5300 |
| Hearing: | Date: | Time: | |
| **JUDGE** | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
| Hon. | | | |

[ x ] ADR Information attached.

## SCHEDULING INFORMATION

**Judicial Scheduling Calendar Information**

Individual courtroom information and the items listed below may be found at: www.occourts.org.

Case Information, Court Local Rules, filing fees, forms, Civil Department Calendar Scheduling Chart, Department phone numbers, Complex Civil E-filing, and Road Map to Civil Filings and Hearings.

**Ex Parte Matters**

Rules for Ex Parte Applications can be found in the California Rules of Court, rules 3.1200 through 3.1207 at: www.courtinfo.ca.gov.  Trials that are in progress have priority; therefore, you may be required to wait for your ex parte hearing.

**Noticed Motions**

* The following local Orange County Superior Court rules are listed for your convenience:
  - Rule 307 - Telephonic Appearance Litigants - Call CourtCall, LLC at (310) 914-7884 or (888) 88-COURT.
  - Rule 380 - Fax Filing, Rule 450 - Trial Pre-Conference  (Unlimited Civil)
.* All Complex Litigation cases are subject to mandatory Electronic Filing, unless excused by the Court.
.* Request to Enter Default and Judgment are strongly encouraged to be filed as a single packet.

**Other Information**

Hearing dates and times can be found on the Civil Department Calendar Scheduling Chart.

All fees and papers must be filed in the Clerk's Office of the Court Location address listed above.

Date:  06/18/2020

Georgina Ramirez
_____, Deputy Clerk

## NOTICE OF CASE ASSIGNMENT

V3 INIT 100 (June 2004)

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ALTERNATIVE DISPUTE RESOLUTION (ADR)
INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any   court   staff responsible for providing parties with assistance regarding  ADR.

(3) Information about the availability of local dispute resolution  programs  funded under the Dispute Resolutions Program Act  (DRPA),  in  counties  that  are participating in the DRPA. This information may take the form of a list of  the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its website as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May Not Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                 STATE:       ZIP CODE:<br>TELEPHONE NO.:          FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY<br><br>For your protection and privacy, please press the Clear This Form button after you are done printing this form. |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13ᵗʰ Street, Westminster, CA 92683-4593

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
        ☐ Under section 1141.11 of the Code of Civil Procedure
        ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____    _____    _____
                        (SIGNATURE OF PLAINTIFF OR ATTORNEY)     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____    _____    _____
                        (SIGNATURE OF DEFENDANT OR ATTORNEY)    (SIGNATURE OF DEFENDANT OR ATTORNEY)

ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION

Approved for Optional Use                               California Rules of Court, rule 3.221<br>L1270 (Rev. March 2019)