1  Ian A. Stewart, SBN 250689
   Valeria Granata, SBN 305905
2  **WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
3  555 South Flower Street, Suite 2900
   Los Angeles, California 90071
4  Telephone:  (213) 443-5100
   Facsimile:   (213) 443-5101
5  Email: Ian.Stewart@wilsonelser.com
   Email: Valeria.Granata@wilsonelser.com
6
7  Attorneys for Defendants/ Cross-Complainants
   BUDDI US LLC and BUDDI LTD
8
9
10              UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
11                    (SOUTHERN DISTRICT)

| | |
|---|---|
| S.C., individually and on behalf of all others similarly situated,<br><br>                Plaintiffs ,<br><br>v.<br><br>BUDDI US LLC, BUDDI LTD., MONITORING PARTNERS LIMITED, and DOES 1-10, inclusive,<br><br>                Defendants. | Case No.: 8:20−cv−01370 CJC (KESx)<br>District Judge: Hon. Cormac J. Carney<br>Magistrate Judge: Hon. Karen E. Scott<br><br>**FIRST AMENDED CROSS-COMPLAINT FILED BY CROSS-COMPLAINANTS BUDDI US LLC AND BUDDI LTD AGAINST CROSS-DEFENDANTS FOR:**<br><br>**1. IMPLIED INDEMNITY;**<br>**2. EQUITABLE INDEMNITY;**<br>**2. CONTRIBUTION; AND**<br>**3. DECLARATORY RELIEF**<br><br>Complaint Filed: June 25, 2020<br>Trial: None Set |
| BUDDI US LLC and BUDDI LTD<br><br>                Cross-Complainants,<br>v.<br><br>LIBRE BY NEXUS, INC., NEXUS SERVICES, INC., and ROES 1-10, inclusive,<br><br>                Cross-Defendants. | |

1

**FIRST AMENDED CROSS-COMPLAINT AGAINST LIBRE BY NEXUS, INC., NEXUS SERVICES, INC., AND ROES 1-10**
3720031v.1

Cross-Complainants BUDDI US LLC and BUDDI LTD., by and through their undersigned attorneys, as and for their First Amended Cross-Complaint ("Cross-Complaint") against Cross-Defendants LIBRE BY NEXUS, INC. and NEXUS SERVICES, INC., allege as follows:

## NATURE OF ACTION

1. This Cross-Complaint arises out of the transaction and occurrences that are the subject matter of Plaintiff's Class Action Complaint [Dkt. No. 1-1]. Plaintiff S.C., an illegal immigrant resident of Orange County, California, was arrested and detained by Immigration & Customs Enforcement ("ICE") for entering the United States without permission.  Plaintiff was subsequently released from ICE detention after obtaining an immigrant release bond. [Dkt. No. 1-1, ¶7.]   Plaintiff S.C. alleges that, as part of the release process, Plaintiff was fitted with a GPS ankle monitoring bracelet through a release bond program run by Cross-Defendants LIBRE BY NEXUS and NEXUS SERVICES, INC. Through that program, Cross-Defendants agree to indemnify the bonding company that provides the immigration release bond and further provide GPS-enabled monitoring hardware leased to Cross-Defendants by Cross-Complainants BUDDI US LLC and BUDDI LTD (collectively, "BUDDI").

2. A class action, the principal action herein, styled as <u>S.C., individually and on behalf of all others similarly situated v. BUDDI US LLC et al.</u>, United States Civil Court for the Central District of California Case No.: 8:20−cv−01370 CJC (KESx) (hereinafter the "Class Action"), was removed from the Orange County Superior Court to this Court [Dkt. Nos. 1, 4] and alleges among other things, violation of the Stored Communications Act, the Electronic Communication Privacy Act, the Telephone Consumer Protection Act and California's Invasion of Privacy Act. The Class Action alleges that Cross-Complainants unlawfully tracked, located and contacted Plaintiff and other undocumented immigrants who had been fitted with Cross-Complainants'

tracking devices for the purpose of removing those devices without the consent of Cross-Defendants, thereby allegedly subjecting the Plaintiff and others to arrest and deportation since the tracking devices are worn as a condition of release from ICE custody. [Dkt. No. 1-1, ¶¶23-34].

3. Plaintiff claims damages against Cross-Complainants in the Class Action, although Cross-Complainants have denied, and continue to deny, that Cross-Complainants violated the statutes at issue or were in any way negligent or otherwise at fault, as alleged in Plaintiff's Complaint, which is incorporated herein by reference as though set forth in full, whether alleged therein or otherwise.

4. Pursuant to Federal Rules of Civil Procedure, Rules 13 and 19, Cross-Complaints now file this Cross-Complaint against Cross-Defendants for indemnity, contribution and declaratory relief.

## PARTIES

5. Cross-Complainant BUDDI US LLC is a limited liability company incorporated in Delaware with its principal place of business in Palm Harbor, Florida. [Dkt. No. 1, ¶17].

6. Cross-Complainant BUDDI LTD. is incorporated in and therefore a citizen of the United Kingdom. [Dkt. No. 1, ¶18].

7. Cross-Complainants are in the business of leasing to third parties the GPS-enabled monitoring hardware subject of this lawsuit.

8. Cross-Defendants NEXUS SERVICES, INC. and LIBRE BY NEXUS, INC. are both corporations headquartered in Virginia and registered to do business in California as foreign corporations.

9. Cross-Complainants are informed and believe, and upon such information and belief, allege that the Cross-Defendants, and each of them, at all times herein mentioned were the principals, agents, servants, partners, joint venturers and/or employees of the remaining Cross-Defendants, and each of them, and at all times herein mentioned were acting within the course and scope

of their respective authority and pursuant to said agency, partnership, venture and/or employment with the consent, express and implied, knowledge, approval, authorization, encouragement and/or ratification of the other Cross-Defendants, and each of them in doing the things alleged in the Class Action.

10. Cross-Complainants are informed and believe that Cross-Defendants LIBRE BY NEXUS and NEXUS SERVICES, INC. act as one company such that each is the alter ego of the other and that they should be considered and treated as one and the same entity for purposes of establishing liability and damages. Hereinafter, Cross-Defendants LIBRE BY NEXUS and NEXUS SERVICES, INC. are collectively referred to as "LIBRE."

11. The true names and capacities, whether individual, corporate or associate, or otherwise, of Cross-Defendants sued herein as ROES 1 to 10 are unknown to Cross-Complainants, and Cross-Complainants therefore sue said ROES 1 to 10 by such fictitious names and will ask leave of this Court to amend their Cross-Complaint to show their true names and capacities when the same have been ascertained. For purposes of this Cross-Complaint, the term Cross-Defendants includes ROES 1 to 10.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and an amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

13. Venue of this action in the Central District of California is proper under 28 U.S.C. § 1391(b) in that it is the District where the main action is pending and where LIBRE is conducting business. The filing of this Cross-Complaint will not deprive the Court of jurisdiction over the subject matter of the action. LIBRE shall be joined as a party in the action because, in LIBRE's absence, complete relief cannot be accorded among those already parties.

///

## FACTS COMMON TO ALL CAUSES OF ACTION

### Relevant Allegations of the Class Action

14. When LIBRE is contacted on behalf of an ICE detainee, LIBRE determines where the undocumented person is being held and arranges to secure a release bond. Upon securing the bond, LIBRE often makes transportation arrangements and provides initial necessities and a cell phone for the released detainee to contact his/her family and to facilitate re-entry into society. [Dkt. No. 1-1, ¶¶25-28].

15. As part of the release process, LIBRE provides the released detainee with a GPS ankle monitoring bracelet through a release bond program run by LIBRE. [Dkt. No. 1-1, ¶¶38-41]. The subject GPS ankle monitoring bracelets were supplied to LIBRE by Cross-Complainants through a Lease Agreement.

16. The Class Action alleges that BUDDI, without knowledge or consent of LIBRE or Plaintiffs and the Class Action Members:

1. Used their GPS tracking bracelet to identify their locations for the purpose of determining which Class Members are within a certain geographic region so that BUDDI may initiate contact with them for its personal financial gain;

2. Accessed Class Members' cell phone numbers by reviewing information entrusted to BUDDI in confidence by LIBRE pursuant to a contractual agreement that BUDDI shall not use that information for any purpose without LIBRE's consent;

3. Used Class Members' cell phones to contact them – by text and/or by phone – after obtaining the Class Members' cell phone numbers by reviewing information entrusted to BUDDI in confidence by LIBRE;

4. Used Class Members' cell phones to contact them and falsely represented that they are calling on behalf of LIBRE in order to trick class members into meeting with BUDDI so that BUDDI can remove the Class Members' GPS tracking bracelets for its personal financial gain;

5. Shared Class Members' cell phones with other third parties who falsely represented that they are calling on behalf of LIBRE in order to trick class members into meeting with LIBRE.

[Dkt. No. 1-1, ¶17].

**Lease Agreement between Cross-Complainants and Cross-Defendants**

17. On or about October 10, 2017, LIBRE and third party Monitoring Partners Limited "supported by its US representative Buddi US LLC" entered into a Lease Agreement ("the Agreement") whereby BUDDI leased the GPS-enabled monitoring hardware subject of this lawsuit to LIBRE. [Dkt. No. 1-1, ¶40; *see also* Exhibit 1].

18. The relevant provision of the Agreement that Plaintiff alleges was violated by BUDDI is Section 12 ("Confidential information"), which states in relevant part:

> "A. The parties acknowledge and agree that they are in a confidential relationship. Any information relating to the performance or operation of equipment or software shall be considered Confidential Information. … The Receiving Party shall not, without first obtaining the Disclosing Party's written consent, disclose to any third party or use for any purpose other than the performance of its obligations under this Agreement.
>
> B. Provider shall not disclose any information about wearers enrolled in the system without the written consent of an authorized officer of the Customer unless compelled to do so by law enforcement official or court of law."

[*See* Exhibit 1].

19. The Agreement states, at Section 4 (c):

> "Provider [BUDDI] will be the custodian of all wearer location information, rules, alters and related equipment status information during the term of this Agreement. The Customer [LIBRE] will have unlimited secured access to all wearer information."

/ / /

6
**FIRST AMENDED CROSS-COMPLAINT AGAINST LIBRE BY NEXUS, INC., NEXUS SERVICES, INC., AND ROES 1-10**
3720031v.1

### Relevant Background of LIBRE

19. There are numerous media reports of governmental investigations and lawsuits brought against LIBRE over the past few years. LIBRE's founder and CEO, Michael Donovan, served 7 months in prison in 1999 for fraud charges because he was not able to post a $45,000 bond. Mr. Donovan claims that this experience was the genesis for the idea of the LIBRE immigration bond program.

20. The primary accusation against LIBRE's business model raised in the governmental investigations focuses on alleged disproportionate costs that LIBRE's clients must pay. LIBRE has been investigated by the federal Consumer Financial Protection Bureau and by the Attorneys General of New York, Virginia, and Washington. The New York Attorney General's court filings state that the Attorney General believed that LIBRE may have been "engaging in fraudulent, deceptive and illegal conduct" by "misleading vulnerable immigrants held in detention centers about the cost and nature of its services." A settlement of the Washington state case against LIBRE resulted in LIBRE paying nearly $3 million in debt relief to more than 400 people.

21. LIBRE has failed to produce documents in other litigation on the basis that LIBRE must protect the confidentiality of its clients. In at least one case, this led the New York Attorney General to request criminal contempt sanctions of LIBRE and the incarceration of Mr. Donovan.

22. The fees paid to LIBRE do not go to the bond amount and are nonrefundable. The GPS-enabled monitoring device costs the LIBRE client $420 per month. The average immigration case in 2019 lasted 25 months, such that someone with a $7500 bond would ultimately pay LIBRE nearly $13,000 in rental and other fees over the course of the case. An investigation conducted by Univision news has reported that data for approximately 5000 immigration bond amounts in five different cities showed an average bond amount of $8,681. By contrast, if one of LIBRE's clients received a bond of that average amount and

wore the tracking device for two years, he/she would end up paying almost $4,000 more.

23. LIBRE has also been accused of failing to provide contracts in Spanish and of actively hiding key financial terms within its contract. There is also an allegation that LIBRE engaged in coercive and fraudulent debt collection practices, including telling consumers that they would be returned to federal immigration custody if they did not pay monthly fees.

24. In addition to the federal and state investigations, LIBRE is defending itself in consumer lawsuits filed in New York and California. The California Department of Insurance also issued a cease and desist order to LIBRE in early 2020 on the basis that LIBRE was engaged in the unlicensed selling of surety insurance in the form of immigration bonds.

25. LIBRE has also been sued by business partners. In 2018, LIBRE was ordered to pay more than $700,000 to RLI Insurance Company ("RLI") which underwrites bonds with LIBRE. RLI claimed that the percentage of bonds that remained outstanding with LIBRE was far greater than would reasonably be expected under the 25 month average life projected in the Department of Homeland Security handbook. In the RLI litigation, documents were produced showing that LIBRE failed to timely pay vendors and had suffered a "precipitous decline in income, profitability and equity" between 2017 and 2018.

**Dispute over Monies Owed by LIBRE to BUDDI and Pending Litigation in Florida between the Parties**

26. LIBRE has been in arrears with amounts due and owing to BUDDI under the Agreement since at least 2018. Numerous written communications exist between the parties between 2018 and 2020 wherein BUDDI makes repeated urgent demands for payment of amounts owed. In response to these pleas, LIBRE makes repeated written promises to pay amounts owed and at no time disputes any amount claimed as due and owing.

27. Indeed, LIBRE was highly complementary of the GPS monitoring technology supplied by BUDDI. On June 21, 2019, LIBRE's VP of Risk Management, Erik Schneider, prepared an internal memorandum that upon information and belief was written to support continuing the BUDDI-LIBRE relationship following completion of the initial term of the Lease Agreement. The memo states in relevant part as follows:

> "As the Vice President of Risk Management at Nexus Services, Inc., I am responsible for the electronic monitoring program at Nexus Services, Inc. in the United States of America. The Buddi Smart Tag device is used to monitor persons who are going through immigration proceedings and are released on immigration bonds.
>
> I hereby certify that Buddi Ltd. has been contracted to supply all of our electronic monitoring equipment and software, as well as providing the technical support throughout the contract.
>
> The contract value awarded was for US $9,020,833.
>
> From 10 October 2017 until 9 June 2019.
>
> Number of devices: ~5000.
>
> **Overall scoring: Outstanding. The Buddi device, software, and support are all far superior in technology and ease of use and any other systems we have utilized over the previous five years."**
> (*emphasis added*)

28. After receiving numerous emails and complaints from BUDDI LTD's CEO, Sara Murray, on December 20, 2019, LIBRE Executive Vice President Richard Moore provided a substantive response to LIBRE's failure to make timely payments for the leased monitoring devices, as follows:

"Sara, at this point you will not believe anything I tell you, so I will keep this short. We will fix this. We will send devices back. We will recover from this and we will rebuild our relationship. I took our last meeting in Majorca to heart and started immediately after that meeting working with experts and recruiters to get my company on the road we are going down now. I have respected your wishes and started to return some of your devices. We will be returning more as well. We will also start payments again soon after we work a few kinks in our systems and make a few more staffing changes.

The recent returned checks were due to a miscommunication. I explained to our finance team that you would not be depositing any more checks per previous communication that clearly misunderstood. This must have been my mistake and I apologize for it.

I assure you that we are realigning our finance team entirely at this time. We are removing people who cannot perform properly and bringing people who have a great experience that is needed. I hope that during the summer I am able again to meet you in Majorca in 2020 as we celebrate together the progress my new team has made to show you that we are a better customer for your services."

29.    Following further written exchanges between Ms. Murray and several individuals at LIBRE, the relationship further deteriorated during the first few months of 2020 due to LIBRE's continued refusal to pay aged accounts receivables of over $7 million.

30.    In response to BUDDI's demands that LIBRE return leased monitoring devices due to LIBRE's ongoing non-payment, in April 2020 LIBRE authorized BUDDI to assist with recovering monitoring devices from LIBRE clients, and LIBRE actively facilitated the recovery of devices by providing confidential client names and contact information to BUDDI.

31.    On April 6, 2020, Ms. Murray sent an email to Erik Schneider of LIBRE entitled "Areas for removals", stating: "Do all Fl and GA, Dallas, ft worth,

10

Virginia, Iowa, Nebraska, Wichita, Tennessee. Have to figure out PPE. Miami is a hot spot."

32. On April 7, 2020, Ms. Murray received an email from Mr. Schneider entitled "Buddi Removals Workbook." The email states: "this is a starter list," and contains a link attaching an Excel spreadsheet containing a list of LIBRE clients who were in possession of monitoring devices. The purpose of this communication by LIBRE was to authorize BUDDI to actively assist in locating and retrieving its devices.

33. On April 8, 2020, after receiving the "Buddi Removal List" noted above, Ms. Murray responded to Mr. Schneider by writing: "Please can you send over names in California, Maryland (primarily for DC Metro area), all of Texas, Arizona, Alabama, Mississippi, Michigan and Pennsylvania." Mr. Schneider replied: "Working on it." Ms. Murray then asked Mr. Schneider to "Please add South Carolina," to which Mr. Schneider replied: "Will do. On the next wave." On April 9, 2020, Ms. Murray asked: "Not sure what below means. Have you got some to send back?" Mr. Schneider responded: "It means I have people working on the last request and I want them to finish that one before I add more. Yes, we got about 30 back yesterday which are going back to you."

34. The Buddi Removal List was on shared website. After April 8, 2020 LIBRE updated the Buddi Removal List with contact information of ankle bracelet wearers, which was accessible by BUDDI online at the link provided by LIBRE.

35. On April 15, 2020, BUDDI started making calls to ankle bracelet wearers after receiving consent to do so from LIBRE.

36. On April 27, 2020, LIBRE requested that BUDDI cease to contact ankle bracelet wearers. BUDDI stopped contacting the wearers as per LIBRE's request.

37. Prior to April 27, 2020, there was no clear restriction imposed by

LIBRE to limit BUDDI's ability to contact wearers of devices in various states. The information that LIBRE provided to BUDDI with customer information was meant to assist with the retrieval process but was not understood between the parties as a strict limitation on those whom BUDDI may contact. Upon information and belief, the goal of both LIBRE and BUDDI prior to April 27, 2020 was to methodically retrieve as many devices as was reasonably achievable for the purpose of mitigating against LIBRE's failure to make substantial payments under the Agreement. LIBRE first raised alleged privacy concerns after relations between the parties had further soured over LIBRE's ongoing non-payment of fees owed.

38. On April 28, 2020, BUDDI sent a Notice of Default to LIBRE with respect to LIBRE's unpaid invoices due to BUDDI under the Agreement, totaling approximately $5,000,000. On May 28, 2020, LIBRE responded to BUDDI's Notice of Default, requesting to mediate the matter and disputing the amount due.

39. A Notice of Intent to Terminate Services was issued by BUDDI on May 19, 2020. The Notice states in relevant part as follows:

> "The purpose of this letter is to provide notice that Nexus has failed to cure the breach of our agreement dated 10 October 2017 for non-payment of outstanding services totaling $7,347,635.10 as of the date of last invoice. We will be terminating your access to all Buddi software at close of business tomorrow, London time and demand that you retrieve all tracking equipment in your inventory and those in possession of your wearers and return said equipment to Buddi within ten (10) business days. Once terminated, we will no longer be tracking your wearers."

40. On May 20, 2020, BUDDI terminated LIBRE's access to BUDDI's software storing information pertaining to the ankle bracelet wearers.

41. BUDDI and LIBRE are currently engaged in litigation over the alleged breach of the subject Lease Agreement in the case of *Nexus Services, Inc.*

*v. Buddi US LLC et al.*, Case No. 2020-CA-5809-0, filed in the Circuit Court of the Ninth Judicial District, Orange County, Florida ("the Florida litigation"). [*See*, Exhibit 2].

42. Attorney Michael Hassen, who is counsel of record for Plaintiff and who seeks to be class counsel for the Class Members, was also LIBRE's attorney until January 2021, and is counsel of record for LIBRE in the Florida litigation.

43. Upon information and belief, the Class Action has been initiated, directed to be filed and controlled by LIBRE.

44. Upon information and belief, the Class Action was not filed for the primary purpose of protecting the legitimate privacy rights of the Plaintiff and the Class Members, but was rather filed as a pretext and for the improper purpose of gaining leverage in the Florida litigation.

45. The above relationship between the Plaintiff, LIBRE and the class attorneys makes the underlying matter wholly unsuitable for class treatment.

## FIRST CAUSE OF ACTION - IMPLIED INDEMNITY
### (Against All Cross-Defendants)

46. Cross-Complainants repeat and re-allege the allegations contained in paragraphs 1 through 45 of this Cross-Complaint, which are incorporated herein as though set forth in full.

47. With respect to the Action, Cross-Complainants have denied, and continue to deny, that Cross-Complainants were in any way negligent, or otherwise at fault, as alleged in Plaintiff's Complaint.

48. Cross-Complainants are informed and believe and thereon allege that Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, are in some manner tortiously responsible for the events and happenings referred to in Plaintiff's Complaint and in this Cross-Complaint, and are liable to said Cross-Complainants as hereinafter alleged.

49. Cross-Complainants are informed and believes and thereon allege that

that Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, were negligent in causing the occurrence of events and happenings herein referred to, including the damages and injuries, if any, accruing to Plaintiff and are directly responsible to indemnify Cross-Complainants and to hold Cross-Complainants harmless of any and all such obligations.

50. If by reason of the foregoing Cross-Complainants are required to pay damages, in an excess of Cross-Complainants' comparative share of said damages, Cross-Complainants will be entitled to be indemnified on a comparative basis by Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, said indemnification representing that portion of the judgment in the underlying action that is attributable to the percentage of comparative of fault assessed or assessable against said Cross-Defendants LIBRE and ROES 1-10, and each of them.

## SECOND CAUSE OF ACTION - EQUITABLE INDEMNITY
### (Against All Cross-Defendants)

51. Cross-Complainants repeat and re-allege the allegations contained in paragraphs 1 through 45 of this Cross-Complaint, which are incorporated herein as though set forth in full.

52. With respect to the Action, Cross-Complainants have denied, and continue to deny, that Cross-Complainants were in any way negligent, or otherwise at fault, as alleged in Plaintiff's Complaint.

53. Cross-Complainants are informed and believe and thereon allege that Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, are in some manner tortiously responsible for the events and happenings referred to in Plaintiff's Complaint and in this Cross-Complaint, and are liable to said Cross-Complainants as hereinafter alleged.

54. Cross-Complainants are informed and believes and thereon allege that that Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, were negligent in causing the occurrence of events and happenings herein referred to,

including the damages and injuries, if any, accruing to Plaintiff and are directly responsible to indemnify Cross-Complainants and to hold Cross-Complainants harmless of any and all such obligations.

55. If by reason of the foregoing Cross-Complainants is found liable to Plaintiff or others, Cross-Complainants will be entitled to be indemnified on a comparative basis by Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, under the principles of partial and comparative indemnity.

## THIRD CAUSE OF ACTION - CONTRIBUTION
### (Against All Cross-Defendants)

56. Cross-Complainants repeat and re-allege the allegations contained in paragraphs 1 through 45 of this Cross-Complaint, which are incorporated herein as though set forth in full.

57. Cross-Complainants contend that if it is held liable by virtue of the Plaintiff's Complaint, Cross-Complainants are entitled to contribution for the payment of any judgment in said underlying action against Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, for any liability, monies, or judgment paid in excess of the degree to which the Cross-Complainants' culpability, fault, or responsibility, if any, contributed to the damages as alleged in Plaintiff's Complaint, if any, and in excess of Cross-Complainants' culpability for Plaintiff's alleged damages.

## FOURTH CAUSE OF ACTION – DECLARATORY RELIEF
### (Against All Cross-Defendants)

58. Cross-Complainants repeats and re-allege the allegations contained in paragraphs 1 through 57 of this Cross-Complaint, which are incorporated herein as though set forth in full.

59. A dispute has arisen and actual controversy now exists between Cross-Complainants and Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, concerning their respective rights and duties in that Cross-

Complainants herein contend that Cross-Complainants are entitled to contribution and/or indemnity from Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, inclusive, by virtue of the theories of equitable comparative contribution and implied partial or comparative indemnity, based on comparative negligence or comparative fault.  Cross-Complainants are now informed and believe and based upon such information and belief, allege that Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, deny the above contentions and contend that Cross-Complainants are not entitled to contribution and/or indemnity from any Cross-Defendant herein.

60.   A Declaration of Rights is necessary and appropriate at this time, in order that Cross-Complainants may ascertain their rights and duties, because no adequate remedy exists by which the rights of the parties may be determined.

## PRAYER

WHEREFORE, Cross-Complainants pray for judgment against Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, as follows:

1.   That in the event a judgment or verdict is rendered in favor of Plaintiff in the underlying action, the trier of fact identify and declare the various percentages or ratios of responsibility or fault for the injuries and damages, if any, to the Plaintiff, as among all parties to the Complaint and Cross-Complaint herein;

2.   That this Court declares that Cross-Complainants are entitled to implied partial or comparative indemnity from Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, for any and all damages assessed against Cross-Complainant, including costs, attorney's fees and legal expenses.

3.   That this Court declare that Cross-Complainants are entitled to contribution from Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, for proportion or damages as its fault, or responsibility bears to the total amount of fault or responsibility of the parties or persons herein in the amount of monies that said proportion will equal;

16
FIRST AMENDED CROSS-COMPLAINT AGAINST
LIBRE BY NEXUS, INC., NEXUS
SERVICES, INC., AND ROES 1-10
3720031v.1

4. For judgment against Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, declaring that Cross-Complainants have no liability as to the Complaint filed in this action, and that the liability is instead upon such Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, and that any liability of Cross-Complainants arising out of this action must be borne proportionately by Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, and Cross-Complainants, based upon their respective percentage of liability or fault under the Complaint filed in this action;

5. That Cross-Complainants herein are entitled to damages from Cross-Defendants LIBRE and ROES 1-10, inclusive, and each of them, inclusive, and each of them, for any and all damages assessed against Cross-Complainants, including costs, attorney's fees, expert fees, and legal expenses;

7. For any and all attorneys' fees, expert fees, costs and discovery-related expenses incurred or to be incurred by Cross-Complainants according to proof;

8. For Cross-Complainants' costs of suit incurred herein; and,

9. For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: November 17, 2021

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/ Ian A. Stewart*
Ian A. Stewart
Valeria Granata
Attorney for Defendants BUDDI US LLC, BUDDI LTD

# CERTIFICATE OF SERVICE

*S.C., individual, et al. vs. Buddi US LLC, et al.*
**USDC Case No.: 8:20-cv-01370-CJC (KESx)**
**Attorneys for Defendant BUDDI US LLC**
**WEMED File No. 15702.00125**

I hereby certify that on **November 17, 2021,** I served the documents described as:

> 1. **FIRST AMENDED CROSS-COMPLAINT FILED BY CROSS-COMPLAINANTS BUDDI US LLC AND BUDDI LTD AGAINST CROSS-DEFENDANTS FOR:**
>
>    1. IMPLIED INDEMNITY;
>    2. EQUITABLE INDEMNITY;
>    2. CONTRIBUTION; AND
>    3. DECLARATORY RELIEF

[X] **BY ELECTRONIC TRANSMISSION:** I electronically filed the above document(s) with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of this filing to the person(s) listed below.

[ ] **BY E-MAIL OR ELECTRONIC TRANSMISSION** – Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 555 So. Flower Street, Suite 2900, Los Angeles, CA 90071.

[X]   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **November 17, 2021,** at Los Angeles, California.

*/s/ Robert Mendoza*
Robert Mendoza

CERTIFICATE OF SERVICE

3720031v.1

# SERVICE LIST

## *S.C., individually vs. Buddi US LLC, et al.*
## USDC Case No. 8:20-cv-01370-CJC (KESx)

| | |
|---|---|
| Todd M. Friedman, Esq.<br>Tom E. Wheeler, Esq.<br>Adrian R. Bacon, Esq.<br>LAW OFFICES OF TODD M. FRIEDMAN, P.C.<br>21550 Oxnard Street, Suite 780<br>Woodland Hills, CA  91367<br>(877) 206-4741<br>Email: tfriedman@toddflaw.com<br>Email: twheeler@toddflaw.com<br>Email: abacon@toddflaw.com | Attorneys for Plaintiff<br>S.C., individually and on behalf of all others similarly situated |
| Michael J. Hassen, Esq.<br>REALLAW, APC<br>1981 N. Broadway, Suite 280<br>Walnut Creek, CA 94596<br>(925) 359-7500<br>Email: Mjhassen@reallaw.us | Attorneys for Plaintiff<br>S.C., individually and on behalf of all others similarly situated |
| Arash Beral, Esq.<br>Ana Tagvoryan, Esq.<br>Allen Ho, Esq.<br>BLANK ROME LLP<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067<br>(424) 239-3400; fax (424) 239-3434<br>Email: ABeral@BlankRome.com<br>Email: ATagvoryan@BlankRome.com<br>Email: allen.ho@blankrome.com | Attorneys for Cross-Defendants<br>LIBRE BY NEXUS, INC. and NEXUS SERVICES, INC. |

19

**CERTIFICATE OF SERVICE**

3720031v.1