Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Gerardo J. Sosa (SBN 313627)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.C., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUDDI US LLC, BUDDI LTD., MONITORING PARTNERS LIMITED, and DOES 1-10, inclusive,<br><br>Defendants.<br><hr>BUDDI US LLC and BUDDI LTD,<br><br>Cross-Complainants,<br>v.<br>LIBRE BY NEXUS, INC., NEXUS SERVICES, INC., and ROES 1-10, inclusive,<br><br>Cross-Defendants. | Case No. 8:20-cv-01370-MCS-KES<br>Assigned to the Hon. Mark C. Scarsi<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**Date:  September 16, 2024**<br>**Time:  1:30 P.M.**<br>**Place:  Courtroom 7C**<br>**Judge**: Hon. Mark C. Scarsi<br><br>**[Filed Concurrently with Declaration of Adrian R. Bacon; Declaration of Lluvia Islas; Declaration of S.C.; Proposed Order]** |

<u>**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**</u>

**PLEASE TAKE NOTICE** that on Monday, September 16, 2024 at 1:30 p.m., before the United States District Court, Central District of California, Courtroom 7C, 350 W. 1st Street, Los Angeles, California 90012 (7th Floor) Plaintiff S.C. ("Plaintiff") will move this Court for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

The Parties met and conferred, and Defendant indicated that it would not be opposing this Motion.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: August 19, 2024                              **The Law Offices of Todd M. Friedman, PC**

                                                   By:  _/s/ Adrian R. Bacon_
                                                        Adrian R. Bacon
                                                        *Attorneys for Plaintiff*

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................1

II. RELEVANT PROCEDURAL HISTORY ......................................2

III. SETTLEMENT ..................................................................................2

    A. The Final Approval Hearing ..................................................3

    B. Attorneys' Fees, Costs Application, And Service Awards..............3

    C. Class Action Settlement Terms ..............................................3

        1. The Class and Subclass ..................................................3

        2. Class Recovery ................................................................4

IV. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL ..........5

    A. CAFA Notice ...........................................................................5

    B. Class  Notice ...........................................................................5

    C. Claims Procedure, Including Expenses, And Claims Received ......6

        1. No Objections and No Requests For Exclusion ...........................6

        2. Settlement Checks ..........................................................7

            a. Possibility of Low Cash Rate .................................................7

V. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED ...............................................................11

    A. The Settlement Should Be Finally Approved by the Court...........11

        1. The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation.....12

        2. The Amount Offered In Settlement................................13

        3. The Extent of Discovery Completed ............................15

        4. The Experience and Views of Class Counsel ..............................15

**5. The Reaction of Class Members To The Settlement**..................16

**6. The Rule 23(e)(2) considerations favor approval.**......................16

**B. The Notice Program Complied with Rule 23 and Due Process**.....19

**VI. S.C.'S APPLICATION FOR INCENTIVE AWARD**.................................20

**VII. CONCLUSION** ...........................................................................221

## **Table of Authorities**

**Cases**

*Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF (C.D. Cal.) ......14

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979).....................................14

*Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673
  (N.D. Cal. June 30, 2011) .................................................................................20

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................16

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d
  939 (9th Cir. 1981) ...........................................................................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................11

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........17

*In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10,
  2014)....................................................................................................................7

*In re Google Inc. Street View Electronic Communications Litigation*, 21 F.4th
  1102 (9th Cir. 2021) ..................................................................................10, 17

*In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815 3d Cir. 2010)……20

*In re Warner Communications Sec. Litig.,* 618 F. Supp. 735 (S.D. N.Y. 1985) ....14

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)
  ...........................................................................................................................15

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d
  935 (9th Cir. Cal. 2011)....................................................................................12

*Marenco v. Visa Inc.*, Case No. 10-8022 DMG (VBKx) (C.D. Cal.) .....................14

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass.
  1987)...........................................................................................................11, 15

*McDonald v. Bass Pro Outdoor World, LLC*, 2014 WL 3867522 (S.D. Cal. Aug.
  5, 2014) .............................................................................................................14

*Mirkarimi v. Nevada Property 1, LLC*, CASE NO. 12-CV-2160 BTM (DHB), 7

(S.D. Cal. Aug. 24, 2015) ..................................................................14

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)...................19

*Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ..............................18

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ................................................................11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .........................................19

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................11

*Raffin v. Medicredit, Inc.*, No. CV154912MWFPJWX, 2018 WL 6011551, at *4
(C.D. Cal. May 11, 2018)......................................................................13

*Reed v. 1-800 Contacts, Inc.,* CASE NO. 12-cv-02359 JM (BGS), 10 (S.D. Cal.
Jan. 2, 2014) ........................................................................................14

*Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW (FFMx) (C.D. Cal.
2012) ...................................................................................................14

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003) ..............................................11

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar.
31, 2014)..............................................................................................16

*Stemple*, 2016 U.S. Dist. LEXIS 157207................................................................16

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (S.D. Cal. 1995) ......20, 21

*Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13,
2008)....................................................................................................20

*Zaklit et al v. Nationstar Mortgage LLC*, No. 5:2015cv02190 (Dkt, 128**)** ............13

**Statutes**

Fed. R. Civ. Proc. 23..........................................................................11, 12, 19

**Other Authorities**

2 *Newberg on Class Actions* (4th Ed. & Supp. 2002) .............................................15

Federal Judicial Center's Judges' Class Action Notice and Claims Process
Checklist and Plain Language Guide (2010)..........................................20

*Manual for Complex Lit.,* Fourth § 30.42 ................................................................15

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff S.C. ("Plaintiff") requests final approval of this proposed class action settlement agreement (the "Settlement Agreement," Dkt. 138-1 Ex. A) with Defendants Buddi US LLC, Buddi Ltd. and Monitoring Partners Limited (collectively, "Defendants").

## I.   INTRODUCTION

The Settlement provides for a substantial financial benefit to the Class Members, a group of immigrants and asylum seekers whose personal information and physical location was allegedly tracked by Defendants, without consent. The Settlement Agreement, reached after extensive adversarial proceedings and an all-day mediation session before Hon. Andrew J. Guilford (Ret.), provides for a significant financial benefit of a $500,000 common fund to approximately 216 Class Members who were subject to Defendants' GPS tracking without notice or consent. Each Class Member will receive one Settlement Credit.  Each California Subclass Member will receive one additional Settlement Credit for a total of two Settlement Credits.  Thus, California Subclass Members will receive two Settlement Credit shares and Class Members will receive one. (Agreement §5).[1]

The notice plan approved by the Court has been implemented successfully by the parties and the Court-approved Claims Administrator, Phoenix Class Action Consulting, Inc. (the "Claims Administrator" or "Phoenix"). Declaration of Lluvia Islas in Support of Motion for Final Approval ("Islas Decl.") ¶¶ 4–6.

On May 22, 2024, Phoenix coordinated and caused Notice to be mailed via First-Class Mail to Class Members. *Id.* at ¶ 7. In all, one hundred fifty-one (151) members of the Class and one hundred five (105) members of the Subclass were

---

[1] The California Subclass Members have an additional legal claim under the California Invasion of Privacy Act, which carries a $5,000 statutory penalty.  Class Counsel believed the added value of a release of this claim warranted additional remuneration above that of the rest of the Class.  This served as the basis for the Settlement Credit formula.

delivered a Notice., representing 70% of total Class Members, 88.3% of the Class whose address could be verified. *Id.* ¶ 10.

This rate is satisfactory, considering the characteristics of the Class (immigrants undergoing Immigration and Customs Enforcement ("ICE") proceedings and asylum seekers—a number of whom no longer reside in the United States). Moreover, the reaction of the Class has also been very positive. There are no objections to the settlement. There are also no opt outs of the settlement.

Class members will receive settlement payments in the amount of $1,147.58, and subclass members will receive payments in the amount of $$2,295.16. The Settlement is abundantly fair and reasonable and should be finally approved.

## II.    RELEVANT PROCEDURAL HISTORY

The accompanying Declaration of Adrian R. Bacon ("Bacon Decl.") provides a more complete history of this matter. Bacon Decl. ¶¶ 4-8. As is relevant to this motion, Plaintiff moved for preliminary approval of the Settlement on February 23, 2024. Dkt. No. 138. The Court granted preliminary approval in substantial part on April 1, 2024, and issued a schedule of outstanding dates and deadlines. Dkt. No. 139. Pursuant to this Court's order granting preliminary approval, Plaintiff hereby submits her motion for final approval. Plaintiff's counsel will file a motion for attorneys' fees and costs concurrent to the filing of this motion.

## III.    SETTLEMENT

In an earnest attempt to settle the action and avoid the risks inherent in proceeding to trial, the parties engaged in a mediation with Hon. Andrew J. Guilford (Ret.). The Settlement Agreement resulted from extensive arm's length negotiations and a private mediation on July 26, 2023. The parties were ultimately able to resolve the case at this private mediation through Judge Guilford's guidance.

Despite strong views about both merits and certification issues from both sides, the parties engaged in settlement negotiations, and during the mediation sessions, were able to reach an understanding with the assistance of Judge Guilford,

the terms of which are memorialized in the Agreement.  As explained below, all of the factors that courts consider weigh in favor final approval of the proposed Settlement.  The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal.  The parties are fully apprised of the strengths and weaknesses of the claims and defenses.  Class Counsel have successfully litigated many TCPA, CIPA, and SCA cases and fully support the settlement.  And that no class members objected or opted out further supports final approval of the settlement.  Plaintiff requests that the Court finally approve the settlement as fair, reasonable and adequate.

### A.      The Final Approval Hearing

At the Final Approval Hearing scheduled for September 16, 2024, the Court will decide whether to finally approve the Settlement and whether to grant Class Counsel's request for attorneys' fees, actual litigation costs, and service awards to the Class Representative.

### B.      Attorneys' Fees, Costs Application, And Service Awards

Class Counsel seek $166,666.67 in attorneys' fees (one-third of the Common Fund); litigation costs currently totaling $11,955.96;[2] and a service award in the amount of $10,000 to the Class Representative to be distributed separately from the Class Recovery.

### C.      Class Action Settlement Terms

The significant terms of the Settlement are as follows:

#### 1.      The Class and Subclass

The Class and Subclass were previously certified by this Court (Dkt. No. 139) and are defined the same in the Agreement as follows:

---

[2] This is less than the $15,000 forecasted cost subject to the Settlement Agreement and Class Notice.  The residual difference goes to the Class.

The "Federal Privacy Class" is defined as:

"All individuals whose GPS tracking data is included in the two spreadsheets produced in discovery by Defendant entitled 'CA contacted no contact_1' and 'GA and TN Nexus Removals (3)_0' – in workbook 'Tennessee.'"

The California CIPA subclass is defined as:

"All individuals whose GPS tracking data is included in the spreadsheet produced in discovery by Defendant entitled 'CA contacted no contact_1.'" (Agreement § 2.1)

The Class consisted of 216 Class Members.  Islas Decl. at ¶ 3.

## 2.    **Class Recovery**

The Settlement provides for a significant financial benefit of a $500,000 Common Fund, which will be distributed on a pro rata basis (after the deduction of Class Counsels' fees and costs, administration expenses, and the incentive award) to the members of the Class.  The total *estimated* distributable fund going to Class Members is $293,779.94. Bacon Decl. ¶ 19.  As of August 19, 2024, Phoenix has received no opt outs.  Islas Decl. at ¶ 13.  Moreover, class members do not need to submit a claim form to receive payment.  Based on these numbers, it is presently estimated that each Individual Settlement Share to be paid to the Federal Class is $1,147.58, and each Individual Settlement Share to be paid to the California Subclass is $2,295.16.  Phoenix will send the settlement checks via U.S. mail within thirty (30) days of receiving approval from counsel to the Parties that judgment has become final.

Class Members shall be advised that the checks must be cashed within ninety (90) days.  Any sums for settlement checks not cashed after ninety (90) days from mailing shall be sent out in a second distribution to those Class Members who have cashed checks in the first round of payments. (Agreement § 14.6) Any checks that remain uncashed after a second round of distribution shall be sent 50/50 to National

Immigration law Center and Electronic Privacy Information Center. (Agreement § 14.5) The Class Recovery shall not revert to Defendant[3].

## IV.    ACTIVITY    IN    THE    CASE    AFTER    PRELIMINARY APPROVAL

### A.    CAFA Notice

Defendant mailed CAFA notices on April 9, 2024 in compliance with 28 U.S.C. § 1715(b). Islas Decl. ¶ 3.

### B.    Class Notice

Phoenix complied with the notice procedure set forth in the Preliminary Approval Order.  Defendant sent Phoenix data regarding the Class including "names, incomplete addresses, phone numbers, and number of credits for each Class Member." Phoenix conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible. Thereafter, Phoenix performed a skip-trace to locate missing information from incomplete addresses. This resulted in one hundred seventy-one (171) complete addresses.  Islas Decl. ¶¶ 4–6.

On May 22, 2024, Phoenix coordinated and caused Notice to be mailed via First-Class Mail to Class Members.  *Id.* at ¶ 7. Of the 171 notices mailed, 20 were returned as undeliverable. An updated address as to these 20 members could not be obtained via skip trace. *Id.* at ¶¶ 8-9. In all, 151 Class Members were mailed a Notice which was not returned as undeliverable, representing 70% of total Class Members. *Id.* at ¶ 10.

Given that the members of the Class are immigrants who were/are undergoing ICE proceedings as well as asylum seekers, this notice rate is positive.  This sector

---

[3] As more thoroughly elaborated below, the Administrator raised the possibility of a low cash rate of the first round of check distribution. In sum, a low cash rate would result in a substantially higher second settlement check being issued to those members of the Class who cashed the first round of checks. Plaintiff's counsel requests the Court's guidance in this regard, and proposes alternatives for the Court's consideration.

of the population generally lack identification documents and information (such as Social Security cards, driver's license, etc.) Moreover, because many of these individuals were undergoing removal proceedings, it is likely that at least some of the Class no longer resides in the United States. Regardless, the high mailing rate was achieved through the joint efforts of counsel and the Class Administrator based on information gathered from Defendant's records, skip traces and NCOA searches. There simply was no superior practicable notice option. Publication would have resulted in zero additional valid participation, and could have resulted in high levels of attempted fraudulent claims, not to mention extraordinary additional cost with zero benefit. Direct notice was the only way, and thankfully Defendant had enough data for the administrator to satisfy the 70% typical threshold.

### C.     Claims Procedure, Including Expenses, And Claims Received

As indicated above, Class Members were not required to submit a claim to receive payment. *See* Bacon Decl. at ¶ 11. Phoenix has received no opt outs to date. Islas Decl. at ¶ 12. Thus, checks will be mailed to all Class Members for whom a valid address can be located, which is 70% of the total Class. Any sums for settlement checks not cashed after ninety (90) days from mailing shall be sent out in a second distribution to those Class Members who have cashed checks in the first round of payments. (Agreement § 14.6) Any checks that remain uncashed after a second round of distribution shall be sent 50/50 to National Immigration law Center and Electronic Privacy Information Center. (Agreement § 14.5) The Class Recovery shall not revert to Defendant.

### 1.     No Objections and No Requests For Exclusion

Class Members were permitted to opt-out[4] or to submit an objection. The deadline to submit a request for exclusion or object was July 8, 2024. Islas Decl. at ¶ 13. As of August 19, 2024, Phoenix has received no requests for exclusion, and

---

[4] Under Fed. R. Civ. P. 23(e)(4), the Court may afford an additional opportunity for Class Members to request exclusion from the Settlement.

there are no objections to the Settlement. *Id*. at ¶¶ 12-13. The fact that there are no objections and no exclusion requests out of 216 Class Members highly supports the adequacy of the proposed Settlement. *In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.")

### 2.    Settlement Checks

Each Class Member will receive their settlement payment automatically, which is presently estimated to be $ 1,147.58 for each Federal Class member, and $2,295.16 for each California Subclass member. The Class Recovery is separate from any amount to be paid for attorneys' fees and costs, incentive award, and settlement administration. Phoenix will send the settlement checks via U.S. mail after receiving approval from counsel to the Parties and funding to be received.

Any sums for settlement checks not cashed after ninety (90) days from mailing shall be sent out in a second distribution to those Class Members who have cashed checks in the first round of payments. (Agreement § 14.6) Any checks that remain uncashed after a second round of distribution shall be sent 50/50 to National Immigration law Center and Electronic Privacy Information Center. (Agreement § 14.5) The Class Recovery shall not revert to Defendant.

### a.    Possibility of Low Cash Rate

Prior to the filing of the motion, the Settlement Administrator flagged the possibility of a low cash rate for the first round of check disbursements, given the transient nature of many of the Class Members. Moreover, because many Class Members are undocumented, they may be unwilling or unable to cash checks, even if they receive them. The Settlement Administrator estimated that cash rates could be as low as 10% of the total Class (approximately 20 people). Bacon Decl. at ¶ 28. Thus, Plaintiff's counsel seeks the Court's guidance in this regard.

As stated above, the Settlement Agreement provides that each Class Member will receive their settlement payment automatically, which is presently estimated to be $1,147.58 for each Federal Class member, and $2,295.16 for each California Subclass member. Any sums unclaimed in the first round of disbursement will be sent out in a second round of distribution to those Class Members who have cashed checks in the first round of payments. Sums unclaimed after the second round of distribution shall be distributed *cy pres*. Bacon Decl. at ¶ 29.

If one assumes that 20 members of the Class cash the first round of checks (approximately 10% of the Class), then each individual in the Federal Class would receive approximately $9,792.66 and each individual in the California Subclass would receive approximately $19,585.33 in total after both rounds of checks. Bacon Decl. at ¶ 30.

As another illustration, if one assumes that 10 members of the Class cash the first round of checks (approximately 5% of the Class), then each individual in the Federal Class would receive approximately $19,585.33 and each individual in the California Subclass would receive approximately $39,170.67 33 in total after both rounds of checks. Each of these scenarios assume that Class half the members who cash the first round of checks are California Subclass members. Bacon Decl. at ¶ 31.

Plaintiff's counsel provides these numbers to the Court to seek guidance on how to proceed with the disbursement of checks given the unique circumstances of the Class. Here, as one option, the Parties can proceed with the disbursement as laid out in the Agreement. This course of action could result on disbursements similar to those illustrated above.

As a second option, the Parties can agree to a cap on the sum of each check in the second round of disbursements. Under this option, Class members who cash the first round of checks will receive a second check for a portion of the uncashed funds. However, the sum of the second check will "capped" at a maximum sum,

regardless of the total number of checks cashed in the first round. Moreover, any remaining settlement funds after the second round of "capped" disbursements have been mailed shall be sent 50/50 to National Immigration law Center and Electronic Privacy Information Center as *cy pres* funds[5].Counsel for Plaintiff, counsel for Defendant, and the Settlement Administrator discussed the possibility of a low cash rate. Bacon Decl. at ¶ 35. Defendant presented an option of creating a cap for second disbursements of $5,000 or $10,000 per participating Class Member, with the remainder going to *cy pres*. Class Counsel does not take a position on whether a cap would be appropriate. However, there is an ever so remote possibility, given the circumstances, that Plaintiff is one of very few Class Members who participates in the settlement, and thereafter receives a very large second distribution check. While this is authorized by the Settlement, as approved by the Court preliminarily, it was unanticipated given the relatively high reliability of the data that Class Members would not participate, and a cap was not part of the Settlement Agreement. Modification of the release would potentially require renotice, at an expense which would further delay the matter and dilute settlement funds. On the other hand, Class Counsel wish to avoid an appearance of impropriety that Plaintiff unfairly benefits from this settlement due to a lower than expected participation rate.

The reason Class counsel drafted the distribution clause in the Settlement as it stands is because it is normally Class counsel's preference for Class Members to receive the money from a settlement, rather than *cy pres*, which is a doctrine literally translating to "as close as possible." In Class counsel view, if the money can go to Class Members, that is better than a secondary source which is "as close as possible"

---

[5] During the discussion of these issues, counsel for Defendants stated that it had no objections to this second option of capping the dollar amount of any second disbursements, with the uncashed sums being automatically allocated to *cy pres*. (See Bacon Decl. ¶ 34, fn. 1)

to going to Class Members.  The only pause Class counsel has here is due to the optics associated with what happens if very few class members cash the checks because they have moved in a manner the Parties cannot see or track due to their undocumented status, receive the checks and are suspicious of getting a large sum of money from an unfamiliar source, and/or otherwise encounter barriers such as lack of access to banking, such that they cannot redeem their funds.

Ultimately, it is unknown whether this concern will manifest.  As stated above, there was over 70% reach, and the web traffic relating to the class website appears relatively active as compared with similar cases Plaintiff's counsel has worked on. Lluvia Decl. ¶ 11. Class counsel does not have a specific reason to think this disbursement will see a low participation rate, but Class counsel would be remiss if it did not prepare the Court for the possibility that it could happen in advance of the final approval hearing.  It is much easier to be proactive with potential solutions than to react to happenstance after a final judgment is entered.

Class counsel present this possibility to the Court, and respectfully requests the Court's guidance on how to proceed with disbursement given the unique circumstances of the case. Class counsel will be prepared to discuss further at the final approval hearing.

To close: regardless of how the money is distributed, either option would be fair and reasonable to the Class.  Class Members will receive all of the funds from the Net Settlement Amount one way or another – either in their own hands, or in the hands of a worthy *cy pres* recipient.  Even if all of the funds went to *cy pres*, the Ninth Circuit has held that is fair and reasonable.  *In re Google Inc. Street View Electronic Communications Litigation*, 21 F.4th 1102 (9th Cir. 2021).  This is only a question of *how* it is distributed and to which pool, not to whether the terms are fair and reasonable.  They undeniably, in Class counsel's estimate, are reasonable.

## V.    THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A.    The Settlement Should Be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009). "[W]here, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass. 1987).

In addition, courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at

arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

All of these factors support a finding that the settlement is fair, reasonable, and adequate. Moreover, the Settlement was reached with the assistance of experienced mediator, Honorable Andrew J. Guilford (Ret.). *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Finally, Class Counsel and the Plaintiff agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Bacon Decl. at ¶¶ 36–39.

### 1.    The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff believes she has a strong case against Defendants, but recognizes the significant risks in litigating it to trial.  Defendants have vigorously contested the claims asserted by Plaintiff in this Litigation from multiple angles, which are described in detail in the declaration of Mr. Bacon.  Bacon Decl. ¶¶ 41-43 .

Defendants' arguments raise a significant risk to the claims at issue in the case, and were given due weight in settlement discussions. For instance, Defendants argued that its October 2017 Lease Agreement with Cross-Defendant Libre permitted Defendant to access GPS information of Class Members. Defendants also argued that the Class Members, explicitly or implicitly, consented to any GPS tracking and communications alleged to have taken place given the context of the interactions between the Class and the Defendants—a bond from ICE detention.

Moreover, Defendant argued that it did not access any GPS information, as it used other methods to contact Class Members. Based on the above, Defendants disputed liability under the TCPA, EPA and CIPA. While Plaintiff's counsel strongly disagreed with these factual and legal positions, Defendants' arguments represented a risk in continued litigation.

Moreover, Plaintiff and Class Members are all immigrants formerly and/or currently undergoing ICE proceedings and asylum seekers. Formal class and merits discovery in this matter implicated serious privacy concerns for both Plaintiff and Class Members. The significance of such privacy concerns is two-fold: First, Defendants could have used Class Members' status as a challenge to the commonality and typicality requirements under Rule 23 in connection with Plaintiff's motion for class certification. Second, and more importantly, any incidental or unintended disclosure of Plaintiff's or Class Member involvement in this litigation could have resulted in serious harm to Plaintiff and/or Class Members, including but not limited to removal from the United States. Thus, reaching a favorable settlement without having to face those possible risks represents a major benefit to the Class. As a result, Class Counsel supports the Settlement and seek its Final Approval. *See* Bacon Decl, ¶¶ 40-43.

### 2. The Amount Offered In Settlement

As set forth above, Defendants agreed to pay $500,000 to fund the settlement, which includes notice and claims administration costs, providing CAFA notice, an Incentive Award to Plaintiff in the amount of $10,000 and attorneys' fees in the amount of $166,666.67 and reimbursement of litigation costs of $11,955.96. Bacon Decl. ¶ 19, Administration costs amount to $17,597.43. Islas Decl. ¶ 16, Ex. C. Thus, $293,779.94 of this Common Fund is estimated to be distributed to Class Members. Class Members are not required to submit a claim to receive payment, and Phoenix has received no opt outs. Each Class Member will receive their settlement payment automatically, which is presently estimated to be $1,147.58for

each Federal Class member, and $2,295.16 for each California Subclass member.

This payment is a significant recovery for Class Members. The relief afforded to Settlement Class Members here is <u>substantially more</u> than the relief afforded in many CIPA class action settlements. Upon review of applicable caselaw, the acceptable range for these types of class action settlements is $100-$500 per claimant, though lower numbers can be justified if financial constraints make this range impossible. *See Raffin v. Medicredit, Inc.*, No. CV154912MWFPJWX, 2018 WL 6011551, at *4 (C.D. Cal. May 11, 2018) (granting preliminary approval of CIPA settlement estimated to result in a recovery of $514 per claimant); *Alfred Zaklit et al v. Nationstar Mortgage LLC*, No. 5:2015cv02190 (Dkt, 128) (C.D. Cal. 2019)(granting final approval of $6,500,000 CIPA settlement resulting in "each Claimant receiving approximately $380.39*"); <u>McDonald v. Bass Pro Outdoor World, LLC</u>*, 2014 WL 3867522, at *7 (S.D. Cal. Aug. 5, 2014) (preliminarily approving a $6,000,000 settlement of a CIPA case with 30,400 identifiable individuals and finding adequate a pro-rata award of approximately $132.57); *Mirkarimi v. Nevada Property 1, LLC*, CASE NO. 12-CV-2160 BTM (DHB), 7 (S.D. Cal. Aug. 24, 2015)(granting preliminary approval of a CIPA settlement resulting in a "a pro-rata award of $64.47"); *Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW (FFMx) (C.D. Cal. 2012) (providing class members with the option to receive a six month extension of a safety plan valued at $100 or to make a claim for up to $50 against a $300,000 fund); *Marenco v. Visa Inc.*, Case No. 10-8022 DMG (VBKx) (C.D. Cal.) (approving an $18,000,000 settlement for a class that numbered approximately 600,000 individuals, or about $30 per individual); *Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF (JCx) (C.D. Cal.) (approving a settlement of $9,480,000 on behalf of a class estimated to include more than 1,000,000 class member, thereby providing relief of less than $10 per class member); *Reed v. 1-800 Contacts, Inc.,* CASE NO. 12-cv-02359 JM (BGS), 10 (S.D. Cal. Jan. 2, 2014)( granting final approval of $11.7 million CIPA settlement wherein

each claimant received $606.56). Here, members of the Class will receive a substantially higher settlement benefits than those in comparable cases.

Thus, the Settlement constitutes a substantial benefit to Class Members.

### 3. The Extent of Discovery Completed

The parties have actively litigated the action and engaged in full and complete discovery of the relevant issues involved in this litigation. Indeed, the contact information and identity of the Class Members was obtained via discovery of Defendants' policies and practices relating to the alleged GPS tracking. Class Counsel are satisfied that the information provided about the Class is accurate, given that it involved a complete production of the files wherein Defendants maintained such data. The time and effort spent examining and investigating the claims militate in favor of final approval of the proposed Settlement, as the process strongly indicates that there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

As detailed in the motion for preliminary settlement approval, Dkt. No. 138, the parties engaged conducted considerable discovery and motion practice prior to counsel for the parties attending an all-day private mediation before the Hon. Andrew Guilford (Ret.). Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745.

### 4. The Experience and Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co*., 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after

hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

It is the considered judgment of Class Counsel experienced in TCPA and CIPA class action litigation that this settlement is a fair, reasonable and an adequate settlement benefiting Settlement Class Members. Class Counsel are experienced consumer class action lawyers, particularly as it concerns CIPA and TCPA class actions.  This Settlement was negotiated without collusion by experienced and capable Class Counsel who recommend its approval. Bacon Decl., ¶¶ 40-43.  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.

## 5.   The Reaction of Class Members To The Settlement

To date, there are no objections and no requests for exclusion (Lluvia Decl., ¶¶ 12-13), which is important in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement here. *See Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the [TCPA] Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS 157207 at *7-8 (finding the lack of objections supported approval of the TCPA settlement).  Class Members have universally approved the Settlement.

## 6.   The Rule 23(e)(2) considerations favor approval.

The considerations outlined in Rule 23(e)(2) also support final approval of the settlement.  The first consideration is the adequacy of Plaintiff's and his counsel's

representation of the Class. Class Counsel, who have a great deal of experience litigating and settling CIPA and TCPA class action cases, wholeheartedly support the settlement.  Moreover, Plaintiff and Class Counsel have vigorously pursued the claims of Class Members, conducting substantial discovery and weighing the risks of continued litigation.  This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length.  This case involved hard-fought nature of this litigation, and the parties approached settlement discussions in the same way.  None of the "red flags" of potential collusion the Ninth Circuit has identified exist in this case.  *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that plaintiffs' counsel may have allowed pursuit of their own self-interest to infect settlement negotiations when they receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund).  The fees being requested by Class Counsel are well at the Ninth Circuit's benchmark for common fund settlements.

The third consideration — the adequacy of the relief — also supports Settlement.  As discussed above, the estimated recovery per Class Member is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal. The distribution plan ensures that Settlement Class Members will be treated equitably relative to each other. The Class Recovery will be distributed to all Class Members and does not require a claim form.

The Settlement Agreement requires a distribution of a first set of settlement checks on a pro rata basis, as outlined above. Any sums unclaimed in the first round of disbursement will be sent out in a second round of distribution to those Class Members who have cashed checks in the first round of payments. Thus, the procedure is designed to ensure that a majority of the settlement funds will be going

directly to Class members. Sums unclaimed after the second round of distribution shall be distributed *cy pres*. Bacon Decl. at ¶ 29.

Moreover, the *cy pres* recipients were selected to advance the interests of the Class given the nature of the lawsuit and the underlying statutes. The Ninth Circuit has held that a class settlement is fair and reasonable even if all funds are allocated as *cy pres*. *In re Google Inc. Street View Electronic Communications Litigation*, supra, 1102. Courts in the district recognize *cy pres* only awards are "a reasonable alternative in light of the infeasibility of making direct payments to every class member." *Id.*, 893. For instance, in *In re Google Inc. Street View Electronic Communications Litigation,* the court granted final approval of a class settlement which created a $13 million fund, which was to be distributed to entirely *cy pres* recipients after fees and costs. The Ninth Circuit Court of Appeals has held that "*[c]y pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).

The proposed *cy pres* recipients are "National Immigration Law Center" or "Electronic Privacy Information Center" ("EPIC"). Both of these organizations advance the interests of the Class, which include the right to privacy from electronic surveillance, as well as the enforcement of such rights in the context of an immigrant population. The National Immigration Law Center is engaged in nationwide advocacy and impact litigation directly affecting members of the class—immigrants and asylum-seekers[6]. Similarly, EPIC engages in nationwide impact litigation and advocacy relating to privacy rights in the context of modern technology[7]. Thus, the allocation of residual funds as *cy pres* donations to the National Immigration Law Center and EPIC advance the interests of the Class given the nature of the lawsuit

---

[6] https://www.nilc.org/about-us/what_we_do/
[7] https://epic.org/about/

and the underlying statutes. Moreover, neither counsel nor Plaintiff have any interest or affiliation with "National Immigration Law Center" or "Electronic Privacy Information Center," the *cy pres* recipients. Bacon Decl. ¶ 47; S.C. Decl. ¶ 15.

Thus, the Settlement provides a substantial benefit to Class Members. Finally, Plaintiff addresses the reasonableness of the requested attorneys' fees in the contemporaneous motion.

### B. The Notice Program Complied with Rule 23 and Due Process

The notice program approved by the Court and implemented by Phoenix satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the class is certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The court-approved notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice was written in English and Spanish and included the dates for class members to object and the final approval hearing.

Phoenix coordinated and caused Notice to be mailed via First-Class Mail to Class Members. Islas Decl. at ¶ 7. Of the 171 notices mailed, 20 were returned as undeliverable. An updated address as to these 20 members could not be obtained via skip trace. *Id.* at ¶¶ 8-9. In all, 151 Class Members were mailed a Notice which was

not returned as undeliverable, representing 70% of total Class Members. Islas Decl. at ¶ 10. As stated above, Class Members in this matter have a high likelihood of lacking American identification documents and/or no longer living in the United States. Thus, achieving a 70% notice rate is positive under these circumstances.

These numbers satisfy due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also, Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, \*13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

## VI.    S.C.'S Application for Incentive Award

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $10,000 to be distributed to the Class Representative, subject to Court approval. Agreement § 7. In the Order Granting Preliminary Approval, the Court preliminarily approved a $5,000 award to Plaintiff. (Dkt. 139).

Incentive awards of three or four times the "presumptively reasonable" award of $5,000 have been found to be reasonable. See, e.g., *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673, at \*4 (N.D. Cal. June 30, 2011) ($20,000 awarded to lead plaintiff).

The various criteria courts consider in determining the amount of a class representative incentive award include risks to the class representative, personal difficulties of the representative, time and effort spent in the litigation, duration of the litigation, and personal benefit (or lack thereof) enjoyed by the class representative. *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (S.D. Cal. 1995).

S.C. was instrumental in bringing this case, having provided Class consel with

the information necessary to successfully litigate this class action for the Class. More importantly, S.C. took on the role of class representative despite the risks to her safety and well-being. As separately discussed in her declaration, S.C. is an immigrant to the United States. Declaration of S.C. ("S.C. Decl.") ¶ 4.  She fled home country due to dangers to her life and safety. Throughout the case, Plaintiff was exposed to the risk of third parties learning her identity as Class Representative of this Action.  Bad actors seeking to punish her for her participation in this litigation could have interfered with her immigration process, which exposed her to the risk of deportation from the United States. Moreover, she risked third parties learning about her background and participation in the lawsuit, which could have been an obstacle to her ability to secure basic necessities such as housing. S.C. Decl. ¶ 6.

Plaintiff was aware of these risks, but chose to act as class representative in order to help enforce the rights of the Class. S.C. Decl. ¶ 8. Either way, Plaintiff not only cooperated readily with the needs of this litigation, but has also done so despite these real concerns of about her safety and well-being over the last four years. S.C. Decl. ¶ 9.

Here, each of the criteria in *Van Vranken* support an incentive award of $10,000. Plaintiff suffered great risk to her life, safety, and well-being in her participation in this litigation which has been ongoing for four years, particularly during a time where "leaks" due to bad actors and/or cyberattack are commonplace. *Van Vranken,* Plaintiff's claim "makes up only a tiny fraction of the common fund." *Van Vranken*, supra, 299.

In sum, Plaintiff acted dutifully in her role as a class representative, despite her real concerns and status as a vulnerable member of the population. As such, Plaintiff should be awarded this reasonable sum of $10,000 for her part in the litigation.

## VII.   CONCLUSION

In sum, the parties have reached this Settlement following extensive arms'

length negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed class action settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorneys' Fees and Costs and Service Awards;
- Enter the proposed order of Final Approval of Class Action Settlement and Judgment; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Date: August 19, 2024

**The Law Offices of Todd M. Friedman, PC**

By: _/s/ Adrian R. Bacon_
Adrian R. Bacon
*Attorneys for Plaintiff*

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3**

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion.  Defendant indicated that it would not oppose Plaintiff's Motion.

Date: August 19, 2024                    **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Adrian R. Bacon_
        Adrian R. Bacon
        *Attorneys for Plaintiff*

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 11-6**

The undersigned, counsel of record for Plaintiff , certifies that this brief contains 6962 words, which complies with the word limit of L.R. 11-6.1.

Date: August 19, 2024                    **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Adrian R. Bacon_
        Adrian R. Bacon
        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 19th day of August 2024, with:

United States District Court CM/ECF system

Notification sent electronically on this 19th day of August, 2024, to:

Honorable Judge Mark C. Scarsi
United States District Court
Central District of California

And all counsel of record as recorded on the ECF page.

<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.